PEOPLE *v.* VICK.

1. CRIMINAL LAW—DUTY OF PROSECUTOR TO FURNISH ALL EVIDENCE
   WITHIN HIS POWER BEARING ON MAIN ISSUE OF GUILT OR IN-
   NOCENCE OF ACCUSED.
   It is the duty of the prosecuting attorney to furnish all
   the evidence within his power bearing upon the issue of
   guilt or innocence, in relation to the main issue, or to
   give some good excuse for not doing so.[1]

2. SAME—WHERE PROSECUTOR SHOWED WITNESS COULD NOT BE
   PRODUCED NEW TRIAL PROPERLY DENIED FOR FAILURE TO PRODUCE.
   Where, on the trial, in a prosecution for violating the
   prohibition law, the prosecutor showed that he was unable
   to locate a witness whose name was indorsed on the in-
   formation, and defendant's counsel gave no intimation
   that said witness was valuable to the defense, and raised
   no question on account of failure to produce her, the trial
   court properly denied defendant's motion for a new trial
   based on the prosecutor's failure to produce said witness.[2]

Exceptions before judgment from Barry; McPeek
(Russell R.), J.    Submitted June 17, 1926.    (Docket
No. 132.)    Decided July 1, 1926.

William Vick was convicted of violating the liquor
law.    Affirmed.

*Calvin L. Bancroft,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *Kim
Sigler,* Prosecuting Attorney, for the people.

STEERE, J.    Defendant was convicted in the circuit
court of Barry county of violating the prohibition law
in the particular that he had in his possession and sold
to one Elmer Parker certain intoxicating liquor con-

[1]District and Prosecuting Attorneys, 18 C. J. § 42 (Anno);
[2]Criminal Law, 16 C. J. § 2641 (Anno).

sisting of one quart of moonshine whisky on the 13th day of June, 1925, contrary to the form of the statute in such case made and provided, etc. Testimony was introduced by the prosecution disclosing that defendant lived upon a farm in the township of Johnstown, Barry county, and on that date three persons, Elmer Parker, Levi Harrington, and a woman named Nora Capron, whose husband was then serving time in the Detroit house of correction, drove to defendant's home in Parker's Ford car, arriving there not long after dinner, and found defendant and his wife at home. The three guests, without preliminaries, went into the house, turned on the Victrola and proceeded to have a dance. After this festivity had progressed for a time, Parker asked defendant if he had any whisky, to which the latter replied in the affirmative. Parker was provided with a container in the form of a quart bottle, which he handed to the defendant, who went out doors and filled it, in compensation for which Parker paid him $1.25. Parker then put the filled bottle in his car. Harrington told defendant he also wanted some whisky. The latter took a two-quart glass fruit can outside with him and brought it back to Harrington filled with like liquid, for which the latter paid defendant $2.50. Not long thereafter the three visitors left defendant's place with their purchases. They went from there to the residence of Nora Capron, where they staid for a time, and Parker then left in his car, going to Vermontville. Harrington remained with the Capron woman at her home until evening, when they went in his car to Nashville, taking along and indulging in the contents of the glass can which he had purchased. They went into a barber shop in Nashville to have her hair cut. They had sampled the liquor which they had with them to such an extent that their intoxication soon attracted attention, and a barber let them out of the back door. Their arrest followed, in connection with which the

fruit can and its yet unconsumed contents were seized and some of the foregoing facts ascertained.

Parker did not drink any of the contents of his bottle until the next morning, when he was driving away with it in his car.    He was soon overtaken by a deputy sheriff and put under arrest.    He then quickly pulled the cork out of his bottle and stuck the end of it down through a hole in the floor board of his car and attempted to empty it, but the officer succeeded in getting hold of the bottle when it still contained about an inch of whisky.    It was identified and introduced in evidence at the trial with its contents as seized. A chemical analysis of the contents yet remaining showed it to be what is commonly called moonshine whisky, and intoxicating.    The contents of the fruit can was also identified and admitted in evidence, with proof that its remaining contents consisted of moonshine whisky.    Parker and Harrington were prosecuted, pleaded guilty, and received their sentences. The Capron woman was in jail for a time, but what became of her afterwards is not clearly shown by the record.    Other testimony, circumstantial in its nature, was introduced by the prosecution.    Defendant did not take the stand as a witness in his own defense. He introduced the testimony of three witnesses tending in some degree to show an *alibi*.    When the parties rested, defendant's counsel moved for a directed verdict.    That was denied and the case submitted to the jury under a fair and impartial charge, clearly stating the issue, and the various safeguards which the law throws around one charged with a crime.

Following a verdict of guilty, defendant's counsel moved for a new trial on various grounds, the only one worthy of any consideration being that the prosecution had failed to call as a witness Nora Capron whose name was indorsed upon the information.    Before the prosecution rested, the sheriff was asked while on the stand if he had made efforts to locate

Nora Capron, to which he replied affirmatively, and said that he had been unable to find her, although an officer had been endeavoring to do so for some time. A subpœna had been issued and in his hands but he had been unable to serve it. Defendant's counsel made no demand during the trial that such witness be pro-· duced or sworn.

Defendant presented to the court, in support of his motion for a new trial, his own affidavit stating that the Capron woman would be a material witness for him, but, relying on the fact thát her name was indorsed upoń the information filed against him, and that she would be produced by the prosecution, as he had a right to do, the failure of the prosecution in that particular deprived him of his defense and of his just rights, resulting in his unjust conviction.   In connection with this, he also presented the affidavit of Nora Capron in which she stated she was with the people's witnesses Parker and Harrington, practically all of June 13, 1925.

"And that they did not, in her presence, or when she was with them, or to her knowledge, on the 13th day of June, A. D. 1925, go to the home of William Vick, in the township of Johnstown, Barry county, on the day aforesaid, and neither did the said Elmer Parker, Levi Harrington, or herself purchase or buy from the said William Vick, upon the 13th day of June, A. D. 1925, any moonshine whisky."

The prosecution presented affidavits in opposition to this motion, one of which was by the prosecuting attorney, who stated, amongst other things, that during the trial no question was raised by the defense "in reference to the fact that Nora Capron was not sworn as a witness and could not be located by the people." This was confirmed by the affidavit of the sheriff, who, in addition to what he testified on the trial, stated in part:

"That he was unable to locate said Nora Capron for

the reason that she had left the community, and diligent search by the said sheriff and his deputies failed to reveal her whereabouts.   *   *   *   That he had several conversations with Nora Capron during the time of her imprisonment at the county jail, and that she repeatedly told him that she had often obtained liquor from Wm. Vick and that Wm. Vick had obtained liquor from her husband's father at Battle Creek, and that her husband's father and Wm. Vick were the ones who were responsible for her husband's predicament, and that they, her husband and his father, had often beat her and mistreated her because she would not aid them to the extent they thought she should in the handling of moonshine liquor."

The prosecution also produced the signed statement of Nora Capron made to the prosecuting attorney shortly after her arrest, attested by two witnesses, confirmatory of the events of June 13, 1925, as shown at the trial by testimony of the prosecution but with greater detail, ending with her arrest at Nashville, of which she said:

"I went into Pearl Staup's barber shop to get my hair cut.   Levi (Harrington) and I were in there together, and I guess I was raising the devil.   Soon Pearl came over and told me that he would like to do the work for me but he thought I had better go some place else as they were after us there and said that perhaps if we went some place else they would not catch us.   Levi asked him if we could go out the back door and he said 'Yes.'   We went out the back way and they picked us up.   *   *   *   I have been made no threats or promises.   I am simply telling the truth because I want to be given a chance and I want to do what is right."

It is strenuously contended that the court committed grievous error in admitting this unsworn statement to consideration at the hearing of defendant's motion for a new trial and "permitting it to become a part of his opinion."   The genuineness of this statement and her signature to it are not disputed.   It would seem to be of equal evidential significance as a letter

signed by her of like import, but whether technically entitled to submission or not as a part of the people's showing in opposition to the motion, aside from it the record discloses that the court had and gave a good and distinct reason for denying the motion, as follows:

"As to the claim now made that the defense was prejudiced by the failure of the people to have the witness Nora Capron in court, I may say that the record discloses that no exception was taken in this circumstance upon the trial, and there is nothing in the record to disclose that the defendant at the time considered his case harmed by the absence of this witness.  It is apparent that an effort had been made in good faith to locate her, and when the statement was made by the sheriff to that effect upon the witness stand, defendant's counsel raised no question whatever on account of the fact.  If the testimony of Nora Capron was valuable to the defense, it must have been so evident at the time, and it was the duty of counsel, both in fairness to himself and to the court, to make objection or comment on account of any threatened injury to the defendant's cause."

The general rule that it is the duty of the prosecuting attorney to indorse upon the information and call all known witnesses to the transaction, if possible, is not to be questioned.  That rule is well and concisely stated in *People* v. *Swetland,* 77 Mich. 53, as follows:

"It is.the duty of the prosecuting attorney to furnish all the evidence within his power bearing upon the issue of guilt or innocence, in relation to the main issue, or to give some good excuse for not doing so."

In this case the prosecution showed a valid excuse for not producing the absent witness before resting, which was not then questioned by the defense, and made it yet stronger when that ground was urged in defendant's motion for a new trial.  The trial court had ample ground for denying said motion.

The various other grounds urged for reversal have been examined and are found to either fail of support

in the record or for other reasons call for no serious consideration.

We find no reversible error in the record and the verdict will stand affirmed. The case is here on exceptions before sentence, and is therefore remanded to the lower court for judgment.

BIRD, C. J., and SHARPE, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.