STATE *v.* PAUL R. SEARLES.

February Term, 1936.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed May 5, 1936.

*A. L. J. Crispe* for the respondent.

*Samuel H. Blackmer,* State's attorney, for the State.

SHERBURNE, J.   The respondent was convicted of taking 20 fish by drawing off water, an offense under P. L. 5665, and brings the case here upon exceptions.

The respondent and two others were severally informed against for identical offenses, and all were tried together.   Although there was a sharp conflict in the evidence, that introduced by the State tended to show the following facts:

One William T. Herrick knew of a large trout in McKean's pond in Dorset and had told the three respondents about it. This pond is a small artificial one and is fed by a large spring. When full the pond is 6 to 7 feet deep at its deepest part.   The overflow is over a shallow spillway and forms a small brook below.

There is a pipe in the bottom of the dam upon which is a valve located under the water above the dam.   To open the valve it is necessary to use a long iron key rod.   When this valve is opened the pond will empty into the brook below in about 1½ hours.   Herrick and the other three left their homes in Manchester at about 4:15 A.M. on Sunday, June 16, 1935, and drove together to this pond to fish in it and try to get the large trout.   They arrived there at about 4:30 A.M. and immediately began fishing.   After fishing for about two hours without success Herrick and respondent Searles walked to an uninhabited cottage about 500 feet away.   There Herrick found an iron which he told Searles was the key to the dam.   They then returned together to the pond, and while Searles was on the dam Herrick opened the valve.   When the pond had partially emptied, Searles went down under the dam and cleaned out the pipe, which had become plugged so that the water would

not come through. While the pond was emptying, the brook below was three to five times its normal size. Herrick closed the valve at about 8 A.M., and thereafter this brook dried up rapidly, but water remained in the deeper pools for a time. After the valve had been closed Herrick and Searles went to picking up fish in this brook, and Searles picked up three with his hands before picking up a big brown trout, which witnesses variously estimated to be from 15 to 21 inches long and to weigh from 1½ to 3 pounds. Later in the day the brook dried up completely and as a result 300 to 400 small trout, which had come down into the brook from the pond when it was emptying, died.

■■ Before the trial Herrick had been adjudged guilty of this offense upon his plea of *nolo,* and had paid his fine. Later he testified about the circumstances at an inquest. When testifying at this trial as a witness for the State about what the respondents, other than Searles, did and how many fish he saw them pick up, his evidence did not agree in some respects with his testimony at the inquest. Whereupon the State was permitted to interrogate him relative to certain questions asked and answers given at the inquest, and later permitted to offer these questions and answers for the purposes of impeachment. To such interrogation of the witness, not to the later reception of evidence of these questions and answers, the respondent Searles excepted upon the grounds that the witness had not been shown to be hostile and that the State could not impeach its own witness. The respondent, in his brief, endeavors to broaden his exceptions and now claims other grounds of objection. These we do not consider. So far as the exceptions saved at the trial are concerned, no error appears.

■ This subject matter is thoroughly discussed in *State* v. *Slack and Clough,* 69 Vt. 486, 38 Atl. 311, and our long established rule has been that it is the duty of the State to produce and use all witnesses within reach of process, of whatever character, whose testimony will shed light upon the transaction under investigation and aid the jury in arriving at the truth, whether it makes for or against the accused, and therefore the State is not to be prejudiced by the character of the witnesses it calls. The ascertainment of the truth, which is the object of the prosecution, is of more consequence than the instrumentali-

ties by which it is sought to be ascertained; and when an instrumentality becomes an obstruction to the course of justice, the State should be permitted to remove it, and by trampling upon it if necessary. *State* v. *Slack and Clough, supra*, 69 Vt. at pages 490, 491. Furthermore, it is not shown how that the respondent Searles was prejudiced. The evidence to which exception was taken did not apply to him.

■ Norman Graham, a fish culturist, was allowed as an expert to testify in rebuttal that the brook below the pond, under normal conditions in June, could not contain a trout between fourteen and seventeen inches in length and weighing one and one-half to one and three-fourths pounds, because there was not enough water to support such a trout. To this the respondent excepted upon the ground that the brook was not in normal condition when the trout was caught. It was the claim of the respondent that when he and Herrick came back from the cottage with the iron, he immediately went down the brook about one-quarter mile to fish, not knowing that the valve was to be opened, and that he caught the big trout in fifteen to twenty minutes, and that after he caught it he first noticed the water was rising. Considering the circumstances of time and distance and the time it may have taken Herrick to open the valve, the extra water from the pond may not have reached the place where the big trout was caught until after it was caught, so the brook may have then been normal. Respondent now says that the logical inference is that this trout came from the pond after the valve was opened, but at the trial he was unwilling to concede that it might have. This evidence tended to contradict the respondent as to how and when he caught this trout. No error appears.

■ The respondent excepted to the introduction of evidence tending to show the number of trout that died because of the brook drying up, and excepted to the refusal of the court to charge that the fact fish so died had no bearing upon the case. He says the question is, how many fish did the respondent take, not how many died from lack of water, and that the latter has no bearing upon the number he took. From our statement of the tendency of the State's evidence, it is apparent that the respondent assisted in draining the pond for the purpose of getting fish. By P. L. 5646 he was, therefore, a principal. So the only question to consider is what constitutes a taking.

■ By P. L. 5590, subd. XXII, the words "take" and "taking" in the fish and game laws shall be construed to mean: "Pursuing, shooting, hunting, killing, capturing, trapping, snaring and netting fish, birds and quadrupeds, and all lesser acts, such as disturbing, harrying or worrying, or wounding, or placing, setting, drawing or using any net or other device commonly used to take fish, birds or quadrupeds; whether they result in the taking or not; and shall include every attempt to take and every act of assistance to every other person in taking or attempting to take fish, birds or quadrupeds; provided that when taking is allowed by law, reference is had to taking by lawful means and in a lawful manner." Under the provisions of this act we have no hesitation in holding that, under the circumstances narrated, the fish that died because of lack of water were taken by the respondent.

■ The respondent seasonably presented fifteen requests for instructions and excepted to the failure of the court to comply with nine of them. He has here briefed three of these. The exceptions were taken only by number and referring the court to the requests on file. As said in *Shields et al.* v. *Vermont Mutual Fire Insurance Co.*, 102 Vt. 224, 252, 147 Atl. 352, 364: "We have repeatedly held that exceptions so taken, without pointing out the matter relied upon and indicating the claimed error in the charge as given, are too general to require attention." See also *Robinson* v. *Leonard*, 100 Vt. 1, 10, 138 Atl. 706; *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 146, 130 Atl. 758; and cases there cited; *Bristol* v. *Bristol R. R. Co.*, 91 Vt. 223, 227, 100 Atl. 37; *In re Bean's Will*, 85 Vt. 452, 459, 82 Atl. 734.

■ The respondent excepted to the overruling of his motions to set aside the verdict and in arrest of judgment. So far as briefed, the grounds of these motions are similar and the gist of them is that there is no evidence that the respondent took twenty fish by drawing off water, or that he assisted in doing so, or that he drew off any water from the pond. The fallacy in respondent's reasoning is that he wishes us to consider his evidence only and to ignore that of the State. Sufficient has been herein detailed to justify the verdict.

*Exceptions overruled. Let execution be done.*