**JORDON v. BONDY, Director of Board of Public Welfare.**

**No. 7601.**

United States Court of Appeals for the District of Columbia.

Decided July 29, 1940.

James J. Laughlin, of Washington, D. C., for appellant.

Edward M. Curran, U. S. Atty., and Allen J. Krouse, Asst. U. S. Atty., both of Washington, D. C. for appellee.

Before STEPHENS, MILLER, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Appellant seeks reversal of an order discharging his petition for a writ of habeas corpus and remanding him to custody to serve the remainder of a sentence imposed for murder, commuted from death to imprisonment for life. He claims that his constitutional rights were violated in the course of his trial, with the consequence that the court lost jurisdiction to proceed with it and to impose sentence. We find no merit in any of his contentions. On the contrary the entire proceeding, presented to us in a lengthy and repetitious record, has earmarks of a fishing expedition entered upon in the hope, now demonstrated baseless, that it would bring about the discovery of some violation of constitutional right which would make applicable the doctrine of Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

The facts concerning the crime and appellant's conviction of it are set forth fully in Jordon v. United States, 1936, 66 App.D. C. 309, 87 F.2d 64, certiorari ·denied, 1938, 303 U.S. 654, 58 S.Ct. 762, 82 L.Ed. 1114, wherein we affirmed the judgment under which he was convicted and originally sentenced. Subsequently executive clemency was denied but, following a Congressional investigation of the case, the President commuted the sentence to life imprisonment. Further proceedings also were had here, including a motion for a new trial on grounds of allegedly newly discovered evidence, which was denied because the judgment had become final before it was made, and the filing of a petition for leave to· seek in the District Court a writ of coram nobis, which likewise was denied. This proceeding, instituted in April, 1939, became appellant's final resort for escape from the commuted sentence. The alleged violations of constitutional right, which appellant says terminated the court's jurisdiction and vitiated the sentence, consisted of: (1) asserted suppression of evidence by the United States Attorney and his assistant, who were in office when the case was tried; (2) alleged misconduct of the jury in receiving information while deliberating; and (3) alleged refusal or failure of the trial judge to be available to the jury while deliberating and· to give further instructions which one or some of them demanded. The original petition made no mention of the two last asserted grounds for relief, but these were added by separate amendments made during the progress of the cause, one of them after hearing had begun and extensive evidence had been received.

A résumé of the salient facts concerning the crime and appellant's conviction is necessary to expose the full nudity of substance which characterizes his contentions.

Appellant was convicted in 1936 of the murder of one Elizabeth Jaynes, which occurred April 3, 1931, in the course of a holdup or robbery in a restaurant known as the Garden T Shoppe near 18th Street on Columbia Road, N.W., Washington. The robbery was committed by two men at about 11:30 p. m. They were approximately twenty-five years of age, and one or both of them were masked. Mrs. Jaynes was the cashier. Other employees and several customers were present. One of the men stood guard, while the other went behind the counter to the cashier's cage and received from her or took from the cash register the money which it contained. While he was doing so a shot was fired from the pistol in his hands, which later caused Mrs. Jaynes' death. The robbers made hurried exit and escaped in a waiting automobile, in which, according to evidence given at the trial in 1936, was also a woman, one Edith Dodsworth, later charged with being an accomplice of appellant in the crime. Soon afterward police arrived at the restaurant. They interviewed Mrs. Jaynes and others, obtaining information by way of description of the robbers. Mrs. Jaynes was highly excited, but there is evidence that she did not know she had been shot when she talked with these officers.

Several suspects were arrested later for questioning in connection with the killing, including appellant and Edith Dodsworth in August, 1931. These two made statements then that they had discussed robbing the restaurant, but concluded the risk was too great, abandoned the idea, and were not on the premises on the night of the holdup or at any other time. They were held in jail for several months, but were released when the grand jury refused to find a true bill upon an indictment charging them with conspiracy to commit robbery.

Thereafter appellant removed to New York and in May, 1935, wrote to the United States Attorney for the District of Columbia, stating his desire to be married and adding: "and of course I have told the girl the truth. The only cloud on my name is my past connection with that case. I would like to know if there is a possibility of my going through another investigation? I am confident that it would not hurt me, but in fairness to the girl I would like to know definitely whether or not I am through completely with that case."

Soon afterward a police officer from the District went to New York, where he interviewed the appellant, who made and signed a confession that he and another committed the robbery. Later appellant returned voluntarily to Washington, where he made further confessions, one to the local police. In one of the confessions he stated that he fired the fatal shot unintentionally, but in another he said it was fired by his accomplice. One of the principal issues at the trial was identification of appellant as one of the persons who participated in the holdup. He then repudiated his previous confessions, four in all, including one made to the husband of the murdered woman and another made to the girl appellant hoped to marry; but in affirming his conviction, we said: "Enough has been said, we think, to show that appellant could neither have been charged with the murder nor convicted of the murder, except for his own statements. That these were voluntary and were made without coercion or promise, is admitted. In the last of them, and in his conversation with the husband of the deceased, he admitted taking part in the robbery and firing the fatal shot; and if the jury believed this, as they had every right and reason to do, there remained then only the question whether appellant was guilty of murder in the first or in the second degree." 66 App.D.C. loc. cit. 311, 87 F.2d loc. cit. 66. It is not necessary to elaborate further the facts which are essential as background against which the contentions now advanced by appellant must be considered. We shall discuss them in the order of their statement above.

I. The alleged suppression of evidence by the prosecuting officials consisted of their asserted failure to bring to the attention of appellant's counsel or of the court a certain record of the police department, known as a "police incidental," and the testimony of certain persons which appellant says might have caused the formation in the minds of the jury of a reasonable doubt concerning his guilt. He has introduced not an iota of testimony that the prosecutor actively concealed or suppressed any evidence bearing on the case; but he says that the prosecutor's failure to introduce the police incidental or call it to the attention of his attorney at or prior to the trial and to place upon the witness stand or give to his attorney the names of certain persons whose testimony it is claimed was material,

constituted "suppression" of evidence. Appellant's theory, in the language of his brief, is as follows: "There was a duty on the part of the prosecuting officials to bring to the attention of the Court *all material testimony that had a bearing on this robbery and murder* to the end that justice would be done"; that the prosecuting officials "were guilty of suppression of evidence when they failed to produce these witnesses at the criminal trial *or to advise counsel for the petitioner* that such witnesses were available," and "when they failed to make available to the petitioner and his counsel the so-called police incidental." (Italics supplied)

To support this broad view of the prosecutor's function and duty, appellant cites excerpts from legal treatises, opinions of courts and public addresses to the general effect that the prosecuting officer has the duty not merely to secure the conviction of the accused, but rather to procure it only by methods which will assure a fair and an impartial trial, and especially to see that the accused is not deprived of constitutional or statutory rights. The salutary principle which imposes restraint upon overzealous prosecution cannot be emphasized too much with respect to circumstances which show that it has been violated. The accused is to be prosecuted, not persecuted. He is entitled by the Sixth Amendment "to be informed of the nature and cause of the accusation; to be confronted *with the witnesses against him; to have compulsory process for obtaining witnesses in his favor,* and to have the assistance of counsel for his defense," as well as to have immunity from self-incrimination under the Fifth Amendment. (Italics supplied)

▪ Appellant's contentions, applied most broadly and especially in the manner sought here, go far beyond these constitutional guaranties and any statutory rights of the accused. In effect they would impose upon the prosecuting officer the duty not only to represent the public, but to represent the accused so far as not only to disclose but to discover evidence which might be considered material to the defense, regardless to some extent of its admissibility, its merely cumulative effect, its equal availability to the accused, and its probable probative effect. Nothing in the Constitution or statutes imposes so broad an obligation. That is true even though it is admitted that the prosecutor not only is not allowed actively to suppress evidence vital to the accused, but is required in certain circumstances to disclose such evidence to him or to the court in order to avoid what would amount in practical effect to concealment.[1] Whether such a disclosure may be required depends of course upon the nature of the evidence, its admissibility and probative value when considered in connection with the other evidence presented in the case.

From excess of caution, we shall refer briefly to the character of the evidence alleged to have been "suppressed" and of the alleged "suppression," including first the "police incidental." That was merely a memorandum made at precinct headquarters by police officers reporting the facts stated to or observed by them in their investigation of the case. It is a record of all complaints received concerning alleged violations of law in the precinct. In the present case it embodied information obtained by the investigating officers from the deceased. Its contents are set forth in the margin.[2] The only point which appellant makes concerning its probative value is in relation to the issue of his identifica-

---

[1] Cf. Young v. United States, 5 Cir., 1939, 107 F.2d 490; People v. Vick, 1926, 235 Mich. 475, 209 N.W. 584 [with which compare People v. Redman, 1930, 250 Mich. 334, 230 N.W. 196]; Mitchell v. State, 1934, 171 Miss. 4, 156 So. 654; State v. Searles, 1936, 108 Vt. 236, 184 A. 701; and see State v. Guilfoyle, 1929, 109 Conn. 124, 145 A. 761, 765; but cf. cases cited in note 3 infra.

[2] "Mrs. Lizzie Jaynes, cashier for the Garden T Shoppe, 1835 Columbia Rd., N. W., reports that about 11:25 this P. M. she was held up at point of pistol and robbed of $90.00 by two young white men who fired one shot at her when they demanded the money. No. 1 is 23–25 years, 6' tall, wearing mask, blue suit. No. 2, about 6' tall, gray eyes, fair hair, no weight given, who held the gun. Mrs. Jaynes was not injured. They escaped in a tan colored 1928 model Chrysler, black wheels, and red stripe around body; D. C. E–3148. These tags have been stolen from a Graham Paige sedan. Later it was found Mrs. Jaynes was shot in side and taken to Garfield Hospital.

"(Signed)    T. F. Heide, and
"F. J. Haack.
"Later interviewed complainant. Lookout sent out.
"M. J. Mahaney.
"Mrs. Elizabeth J. Jaynes died at Garfield Hospital 6:15 P. M. April 5, 1931. Coroner notified by Bureau."

tion as one of the robbers. The incidental describes one man as "6' tall" and the other as "about 6' tall." This, it is claimed, contradicts the fact that appellant participated, since he is admittedly less than six feet in height and is described as being "short" or approximately five and one-half feet tall.

There is nothing to show that the incidental was suppressed. It was a public record, available for public inspection and therefore as much so to appellant and his counsel as to the prosecution. The record does not show that appellant's counsel at the trial, now deceased, did not know of its existence or contents, though present counsel of course learned them later and sought to make use of them as "newly discovered evidence." No facts were proved to show that the prosecuting or police officers made any attempt to conceal the existence or contents of the incidental. The most that appears is that they did not call it to the attention of the court or of counsel for the defense. The prosecution did not use it in evidence and asserts that neither they nor appellant could have done so, because, being hearsay and made by one deceased, it was not admissible. The circumstances surrounding the giving of the description by Mrs. Jaynes are such that the statement hardly can be classed as either a dying declaration or res gestæ, and the admissibility of the statement on these grounds therefore is highly questionable. But even if it had been admitted, we find nothing to show that it would have changed the result at the trial.

Apart from the question of its admissibility and that of its "suppression," the probative value of the incidental is highly doubtful. In the first place, the record shows conclusively that Mrs. Jaynes was greatly excited when the officers secured her description of the men immediately following the holdup. Further, the testimony introduced at the trial from various eyewitnesses described the two men as differing in height, but there was some variance concerning the amount of the difference. This is true also of the evidence by other eyewitnesses who testified at the habeas corpus hearing, but not at the trial. Finally, appellant's confessions of his part in the crime furnished conclusive evidence identifying him as one of the robbers, if believed by the jury, as it must have been. In the face of such evidence and the corroborative testimony introduced, it is inconceivable that the police incidental, if placed in evidence, would have changed the verdict. It was at most cumulative in probative value to other evidence which was introduced and did not suffice to overcome the effect of the confessions.

The same conclusion must be reached with reference to the failure of the District Attorney to place upon the witness stand or disclose to the defense attorney the names of persons whose testimony appellant says was vital to the defense. Complaint is made in this respect particularly with reference to certain eyewitnesses to the crime, Mr. and Mrs. F. C. Schneider and Mr. and Mrs. Clark R. Long. All were customers receiving service at the restaurant. With the exception of Mrs. Long, they were interviewed by the police or by the District Attorney's office, but were not called as witnesses at the trial. However at least four other eyewitnesses were called and testified, namely, Mildred Colt, Carvie Mason, Gertrude Yates and Virginia Bryant. Their evidence was principally in corroboration of appellant's confessions, relating to the circumstances surrounding the commission of the crime and to description of the robbers as observed by them in the excitement. But in the latter respect, as we said in Jordon v. United States, supra, their testimony could not have sustained either a charge or a conviction of the murder by appellant apart from his confessions. In other words, it was not sufficient of itself to identify him as one of the robbers. We have examined carefully the testimony given at the hearing in this cause by the eyewitnesses who did not testify at the criminal trial and, so far as it discloses what they knew concerning the offense, its effect could have been only cumulative to the testimony given at the trial. No one of the four would attempt to say that appellant either was or was not one of the robbers. All were extremely vague in their descriptions of the men. They recalled them uniformly as "young," and as differing somewhat in height, but varied in their recollections concerning the amount of difference and concerning height itself. Their testimony, if given, hardly could have aided in identifying appellant or overcoming his identification, established as that was by four distinct confessions made admittedly without duress or other improper pressure, one of them to the husband of the murdered woman, another to appellant's intended bride.

■ Appellant complains especially of the court's refusal to permit Mrs. Frank J. Bell to testify concerning statements made to her by Mrs. Jaynes several minutes after the holdup occurred. Mrs. Bell, manager of the apartment building where the restaurant was located, was not present when the robbery and shooting took place or when the robbers escaped, but entered the room shortly afterward. She assisted Mrs. Jaynes to the restroom, where she aided in examination of her person, finding no evidence that she had been shot. Appellant contends that the conversation between the two women during this course of events was "part of the res gestæ," and therefore complains of the court's refusal to permit Mrs. Bell to testify at the hearing below concerning the statements made to her by Mrs. Jaynes. We find no merit in the contention. The crime had been completed before Mrs. Bell arrived upon the scene. Her entire part had to do with its aftermath, not with the act or acts constituting it. What Mrs. Jaynes told her was purely hearsay, not made under circumstances which created either consciousness or fear of impending death. Furthermore, in view of Mrs. Jaynes' own inability to give more definite description of the robbers than that made almost simultaneously to the police officers, it is difficult to see how anything she might have said to Mrs. Bell could have been helpful in identifying the murderer or overcoming appellant's self-identification as such.

We think therefore that the charge of suppression of evidence comes to naught; first, because it has not been shown that the alleged evidence would have been helpful to the appellant, since, directed as it was chiefly toward the issue of his identification as the robber and murderer, it could only have been cumulative to that given by other witnesses and, like theirs, therefore could not have overcome the effect of his confessions; second, because in the respects we have specified it was inadmissible; and, finally, because there is no evidence whatever that the prosecuting officials were guilty of suppressing evidence, either with respect to the police incidental or with reference to oral testimony or other evidence.

■ The Constitution literally requires only that the accused "be confronted with the witnesses against him," and that mandate was complied with literally at the trial. But if the spirit requires the letter to be construed more broadly, so as to require the prosecutor to disclose, in order not to conceal, evidence which comes to his knowledge prior to the trial and vitally affects the question of guilt or innocence, whether to the court or to the accused or his counsel, there is no violation of either letter or spirit when he merely fails to disclose evidence of which he has no knowledge or fails simply to use or disclose evidence which is only vague, inconclusive and cumulative, as was that in question here. It has been held repeatedly that the prosecution is under no obligation to call all witnesses subpœnaed by the Government,[3] and we now hold that it is no sufficient ground for release by habeas corpus from punishment lawfully imposed that the prosecution either does not discover or does not use as witnesses or disclose the names of persons whose testimony can be only cumulatively corroborative of facts fully proven by other witnesses or evidence. The court below rightly found that there was no suppression of any evidence at appellant's trial.

■ II. Appellant complains of alleged misconduct of the jury in receiving information improperly in the course of its deliberations. One of the jurors, Israel F. Goode, testified that a copy of the Code of the District of Columbia was brought into

---

[3] Williams v. United States, 1927, 57 App.D.C. 253, 20 F.2d 269; Sanford v. United States, 1938, 69 App.D.C. 44, 98 F.2d 325. See also Cummings v. United States, 9 Cir., 1926, 15 F.2d 168; Miller v. United States, 7 Cir., 1931, 53 F.2d 316; Beard v. United States, 8 Cir., 1932, 59 F.2d 940; Love v. United States, 9 Cir., 1935, 74 F.2d 988; United States v. Peterson, D.C.E.D.Pa., 1938, 24 F.Supp. 470; People v. Karatz, 1937, 365 Ill. 255, 5 N.E.2d 842; People v. Redman, 1930, 250 Mich. 334, 230 N.W. 196; State v. Swain, 1912, 239 Mo. 723, 144 S.W. 427; Commonwealth v. Tauza, 1930, 300 Pa. 375, 150 A. 649; State v. De Cesare, R.I., 1940, 12 A.2d 727. The last case cited is closely analogous to the case at bar.

The rule is at variance with the early common-law rule which required the prosecution to produce all witnesses who saw the crime committed. But the reason for that rule no longer exists, namely, that the defendant was not permitted to have witnesses, and his own lips were sealed from giving testimony. Cf. 16 C.J. 845, § 2132. Now he is not only entitled to be confronted with the witnesses against him, but also "to have compulsory process for obtaining witnesses in his favor."

the jury room, and was examined by him and others while the jury was considering the verdict which it would render. He further testified that another juror at a later time examined this volume in the hallway leading to the jury room as the jurors were passing out of the building at mealtime. Apart from the question of the admissibility of this testimony,[4] it is sufficient to say that it was contradicted flatly by the evidence of other jurors, ten of whom testified at the hearing, and by that of the deputy marshal who had charge of the jury during its deliberations. Some testified that they saw no copy of the Code or similar volume in the jury room or hall, others more positively that there was none in either place. On evidence so overwhelmingly contradictory to Goode's story, the court properly found that no copy of the Code was "either in or taken into the jury room" during the deliberations and that the jury did not receive any unlawful information. It could hardly have found otherwise.

III. Appellant's third principal contention is that he was prejudiced in his constitutional rights by the alleged failure of the trial judge to be available to the jury during its deliberations, thereby depriving it of the benefit of further instructions which one or some of them demanded. This contention likewise is without merit and it would be sufficient disposition of it to point out that it was considered when appellant's conviction and sentence were here on appeal and was disposed of then as we dispose of it now. But that the matter may not appear to receive cursory treatment, we again painstakingly state the facts and our conclusions concerning them.

The jury began its deliberations about noon on a Thursday and returned its verdict shortly before noon the following day. Late Thursday afternoon or evening, when the judge had returned to his home, Juror Israel F. Goode made a request for additional instructions. The record indicates that others joined in the request, not because they desired further instructions for their own benefit, but for the purpose of clarifying Goode's mind and bringing it into agreement with theirs. The request was communicated through the foreman to the deputy marshal, who sought the judge at his chambers, but returned and reported that the judge had gone to his home, that they would have to send for him, and that it was late to do so. The jury continued its deliberations without sending for the judge, retired for the night, resumed deliberations the following morning and continued them, as has been said, until its verdict was reached shortly before noon. Although the judge was available during Friday morning, there is nothing to show that the request for further instructions was repeated. When the verdict was returned, the jury was polled, and each juror, including Goode, indicated his assent to it solemnly in open court.

From all the evidence it appears that Goode was the only juror who desired additional guidance, that he made his request or requests after regular court hours, that he did not repeat it on Friday morning when the judge was available and deliberations were continuing; that he assented to the verdict in open court when the jury was polled; and there is nothing to show that he insisted upon having the judge sent for on Friday or that he at any time informed the court that he desired further enlightenment.

Under these circumstances, and recognizing that the judge's duty is to make himself available to the jury for further instructions at all reasonable hours, we think in accordance with our previous ruling that no violation of duty by the court has been shown. The only reasonable conclusion is that if Goode at one time during the jury's consideration of the case desired additional instructions concerning its disposition, he did not desire them sufficiently at that time to demand that the judge be sent for, and by the time the judge was readily available during later deliberations by the jury, he had resolved his doubts and no longer wished to have further instruction.

Upon the entire case, therefore, we agree with the conclusions reached by the trial court, namely, that none of the appellant's constitutional or statutory rights were violated during his trial in any of the respects urged below or here; that the court did not lose jurisdiction of the cause; and that appellant is not entitled to the relief he seeks by way of habeas corpus.

We have painstakingly spelled out the reasons for our action because of the nature of the proceeding and the fact that the

4 See authorities and discussion in Jordon v. United States, 1936, 66 App.D.C. 309, 312, 87 F.2d 64.

liberty of appellant for the remainder of his life is at stake, not because the contentions which have been made on his behalf have merited such treatment. Were the consequences for appellant less serious than they are, we should be inclined to regard the arguments made here in his behalf as frivolous and to treat the appeal accordingly. Counsel has burdened the court below with a long and tedious hearing, devoid of semblance of merit in the facts and arguments advanced, and this court with an appeal which hardly needed to be taken in view of the want of success in what appears to have been the primary object of the proceeding below. It seems to have been thought that because a Congressional investigation and one made by the Pardon Attorney of the Department of Justice resulted in a commutation of the original sentence to life imprisonment, that gave ground for relieving appellant entirely of the consequences of the crime for which he was convicted. The exact contrary is the case. Had the legislative and executive inquiries disclosed evidence demonstrating appellant's innocence, the executive power would have been exercised to establish it, not to deny it, as was done.

It remains to dispose of appellee's motion to strike certain statements appearing in appellant's reply brief, as pertaining to matters which are not part of the record and containing scandalous matter. The matter in question was inserted in reply to statements contained in the appellee's brief questioning the motive of the proceeding by appellant. While counsel was entitled to reply to this charge and some of the questioned portions of the brief were pertinent in doing so, portions of his language charged, we think without justification, that the appellee was trying to confuse the court and that certain statements made in appellee's brief concerning appellant's motive were not only unwarranted and unjustified but "reprehensible." We do not find anything in these statements which justifies characterizing them as "reprehensible," and we think that charge as well as the sentence charging appellee with attempting to confuse the court should be stricken.

We think also that all of the material on pages 6 and 7 and in the first four lines and in lines 10 to 19, inclusive, of page 8 of appellant's reply brief should be stricken. The motion is therefore granted in the respects which we have specified.

The order of the District Court is affirmed.