408

**In re CURTIS.**

No. 2092.

District Court of the United States for the District of Columbia.

Jan. 3, 1941.

John P. Mullen, of Washington, D. C., for petitioner.

Edward M. Curran, U. S. Atty., and John W. Jackson, Asst. U. S. Atty., both of Washington, D. C., for respondent.

MORRIS, Justice.

The petitioner, James Curtis, was indicted in the District of Columbia on March

18, 1937, for the crime of robbery. After trial, had in this Court, he was convicted on March 22, 1938. Upon motion of the petitioner, he was granted a new trial, which was held on January 17 and 18, 1939, on which trial he was found guilty as indicted. A motion for new trial, made by the petitioner, was on January 27, 1939, denied. On April 19, 1939, motion by the petitioner for leave to file a further motion for a new trial was overruled. Thereupon sentence was imposed upon the petitioner to serve a term of from 2 years and 2 months to 5 years, pursuant to which he is now confined in the Washington Asylum and Jail for the District of Columbia. Thereafter the petitioner in proper person, on May 19, 1940, filed a document entitled "Specification of Errors on Appeal," together with a document entitled "Notice of Appeal in Forma Pauperis." These papers were filed in the District Court of the United States for the District of Columbia. They were, however, noted in the Court of Appeals for the District of Columbia as Number 7418 and entitled "James Curtis, Appellant v. United States of America." Such appeal was dismissed upon motion of the appellee on June 19, 1939, because of the failure of petitioner to file a notice of appeal within the time required by the rules. On August 12, 1940, this Court permitted the petitioner to file, without the prepayment of costs, a petition for à writ of habeas corpus, pursuant to which the writ issued.

The contention of the petitioner, in substance, is that his right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor," guaranteed to him by the Sixth Amendment of the Constitution of the United States was violated in the course of his trial, with the consequence that the Court lost jurisdiction to proceed with such trial and to impose sentence upon him. In connection with the first of these contentions, it is alleged that he was not confronted with the following "witnesses against him": Nathan Reiskin, proprietor of the drug store alleged to have been robbed, Vincent Curley, a clerk in said store, Blanche P. Green and George F. Green, all of whom were named as witnesses in the police report of the robbery, generally referred to as the "police incidental." The petitioner also complains of the refusal of the trial judge to permit the introduction in evidence of such "police incidental." In connection with the second contention of the petitioner, it is alleged

that, although at his request subpoenaes were issued to five witnesses who would have testified, if called, that petitioner was in another city at the time of the alleged robbery, none of such subpoenaes was ever served, although each of said witnesses was at his proper place of residence or employment as specified in defendant's application for subpoenaes and available for service. The return and amended return to the writ, filed by the respondent, admitting the conviction and detention of the petitioner, in substance, states that the petitioner was confronted by the witnesses against him, and that counsel for the petitioner at the time of the trial had full knowledge from the "police incidental" of the names and addresses of all persons present at the time of the robbery who were not called to testify on behalf of the Government. It is further stated, in substance, that Nathan Reiskin was not called as a witness on behalf of the Government, because he was not present at the place of the robbery at the time of its occurrence; that Vincent Curley was not called as a witness on behalf of the Government because, although he did not believe that James Curtis is the man who committed the robbery, nevertheless he would not say that Curtis is not the man inasmuch as he is not positive; that the other witnesses referred to in the petition, namely, Blanche P. Green and George F. Green, were not called as witnesses on behalf of the Government because they were unable to say whether Curtis is or is not the man who committed said robbery, although they were present at the place of the robbery and at the time of its occurrence. Said return further denies the allegation that subpoenaes issued to witnesses on behalf of the petitioner were not served.

After several continuances, granted upon the asking of the petitioner, a hearing was had on November 29, 1940, at which hearing testimony of the following witnesses was taken: T. Edward O'Connell, the attorney for the petitioner at the time of his first trial and the granting of a motion for a new trial; James J. Laughlin, attorney for the petitioner at the time of the second trial; Vincent J. Curley, Blanche P. Green and George F. Green, the absences of whom as witnesses on behalf of the Government are complained of by the petitioner in these proceedings; Jesse G. Abrams and James Bowyer, both of whom were witnesses at the trial of the petitioner, and who definitely and positively identified the petitioner as one of the two men who com-

mitted the robbery charged in the indictment; Ernest Thompson, an officer of the Metropolitan Police Force, who accompanied Vincent Curley to Baltimore, Maryland, for the puropse of identifying the petitioner in a "line-up" in that city; and James Curtis, the petitioner, who did not testify on his behalf at the trial, but who denied in his testimony in these proceedings that he was present or involved in the robbery of which he was convicted. In addition to these witnesses, there was introduced in evidence a transcript of the proceedings of the trial of the petitioner held on January 17 and 18, 1940, which, according to stipulation of counsel herein, is a full, true and correct transcript of the testimony given at such trial.

█ Dealing first with the second contention that the petitioner was denied the right "to have compulsory process for obtaining witnesses in his favor," the evidence disclosed nothing in support thereof. In the first place, pursuant to an affidavit filed by the petitioner prior to his first trial, process was issued to obtain such witnesses on his behalf, and such process was served. These witnesses were desired to establish the presence of the petitioner at some place other than the city of Washington at the time of the robbery. The testimony of James J. Laughlin, the attorney for the petitioner at the time of his second trial, showed that he interviewed these witnesses who were present for the purpose of testifying, and that he considered that the testimony of these witnesses would not be helpful to the defendant, and directed them to return to the City of Baltimore where they resided. Not one of these witnesses appeared at the hearing in these proceedings; nor was any evidence, other than certain statements of the petitioner, produced which would show that, if they had been present and testified in the trial of the petitioner, his presence elsewhere than at the place of the commission of the crime would have been established by them.

█ As to the contention that the petitioner was denied the right "to be confronted with the witnesses against him," it is apparent that, if by this is meant that the witnesses on behalf of the Government whose testimony is to be considered by the jury shall be present and give their testimony in the presence of the person on trial so that he may subject them to cross-examination, obviously this requirement has been fully complied with. The witnesses present at the time and place of the robbery who testified against this petitioner were the witnesses who positively identified the petitioner as one of the persons committing the robbery, and the petitioner was confronted at the trial by them, as he was also confronted by those witnesses whose testimony tended to prove "flight showing a consciousness of guilt." The extent to which the evidence went in this direction were the circumstances that the petitioner failed to appear pursuant to the conditions of his recognizance and was apprehended several months later in Baltimore, Maryland, at which time he represented his name to be other than James Curtis. If by the provision of the Sixth Amendment, guaranteeing the right of an accused person "to be confronted with the witnesses against him," is meant that the Government shall cause to be present at the trial every person present at the time and place of the commission of a crime, whether or not the Government wishes to make use of such persons as witnesses, so that the defendant may have the benefit of their testimony, then the provision was not complied with in this case. By the early common law, the prosecution was required to produce all witnesses who saw the crime committed, but the reason for that rule was that the defendant was not permitted to have witnesses and his own lips were sealed from giving testimony. Now he is not only entitled to be confronted with witnesses against him, but also "to have compulsory process for obtaining witnesses in his favor." Jordon v. Bondy, App.D.C., 114 F.2d 599, decided July 29, 1940, at p. 604 note 3. I cannot, therefore, agree with the construction of the provision of the Sixth Amendment in question contended for by the petitioner. Of course, if any action on the part of the prosecution amounts to the suppression of evidence, such would offend the constitutional guaranties of a person accused of crime, for which relief, even in proceedings of this character, should be afforded. To determine whether or not there has been such suppression of evidence, it is necessary to consider the facts and circumstances in each case in which the question arises. If the evidence in question has no probative value, is merely cumulative, or is equally available to the accused, there can certainly be no duty on the prosecution to disclose such evidence to the accused in order to avoid what would otherwise amount, in practical effect, to concealment or suppression. Jordon v. Bondy, supra.

■ The testimony is undisputed that Nathan Reiskin, the proprietor of the drug store at which the robbery was committed, was not present at the time of the crime. His presence as a witness could have served no purpose. The testimony of George F. Green is that he was made to get into a corner when the men who robbed the store came in; that he did not get a good look at them; and that he could not recognize them if he saw them again. Blanche P. Green testified that she came into the store while the robbery was in progress; that a short man put a gun in her side and told her to go to the back of the store; that she did not see the other man; and that she could not recognize the persons who committed the robbery. Clearly there could be no suppression of evidence on the part of the Government in failing to call either Reiskin, George F. Green or Blanche P. Green. The whole question then comes to whether or not the failure on the part of the Government to call as a witness Vincent Curley amounts to a suppression or concealment of evidence.

■ Curley's testimony in these proceedings shows that he did have opportunity to observe both men who committed the robbery. After the robbery he was shown several photographs, including that of the petitioner. He did not identify the picture of the petitioner as one of the men. Curley was later taken to Baltimore to view a line-up of men, including the petitioner. He recognized the petitioner as being one of the men whose picture he had seen, but he did not believe that he was one of the men who had committed the robbery, although he could not say definitely that he was not. Mr. Curley's testimony in this connection is fairly well set forth in a written statement made by him on July 9, 1940, which was incorporated in his testimony, and which reads as follows:

"Several weeks later I visited the Baltimore jail, at which time I viewed a line-up of four or five men. At that time a man, later identified to me as James Curtis, was in the line-up. At that time when I viewed the line-up I felt as though the man I later learned was James Curtis, who was in the line-up, was not the taller of the two men who engaged in the hold-up at 87 Florida Avenue, referred to above. I cannot say positively whether he was or was not the taller of the two men. Deep down in my heart I do not believe that it was the man, and I did not believe it at the time, but I had to allow myself a certain leeway for my own weaknesses, as far as remembering is concerned, in my excitement, and therefore I did not want to be positive either way. I feel now that if I saw the taller of the two men that engaged in the robbery that I would recognize him; but until such a time as I would see that man and positively put myself at ease that he was the hold-up man I would not say positively that the one known to me as James Curtis was not the man."

I am not willing to state, if the existence of this witness, known to the prosecution, had been concealed from the petitioner, that he should not have the relief which he here seeks. The case turning so largely, as it necessarily did, upon the question of identification, the fact that a person having the opportunity to observe those committing the crime could not identify the accused is a fact which, if known to the prosecution, should not be concealed from the defense. But I do not believe that it can be said that such fact was concealed in this case. The testimony in the trial of the case showed that Vincent Curley was present at the time and place of the robbery, and that he was not called as a witness, because he could not positively identify the petitioner. Furthermore, the evidence showed conclusively that counsel for the petitioner, at the time of his trial, pursuant to a subpoena issued on behalf of the petitioner, had the record of the "police incidental" which disclosed the name and address of Vincent Curley. There is not here, as there was in the case of Johnson v. United States, 71 App.D.C. 400, 110 F.2d 562, decided February 28, 1940, the situation where counsel appointed by the Court to defend an accused failed to exercise diligence in producing evidence material to the defense. Here the counsel acting for petitioner was of his own choosing, employed by him; and here also was a serious question of judgment to be exercised by such counsel as to whether it would be more to the advantage of the petitioner to require Vincent Curley to testify on behalf of the petitioner—unable as he was to state positively that the petitioner was not one of the men engaged in the robbery— or to urge upon the jury—under instructions of the Court, requested on behalf of the petitioner—that from the failure of the Government to produce Curley as a witness the inference should be drawn that his testimony would be unfavorable to the prosecution. Counsel chose this latter

course, a course he could not have chosen had he, on behalf of petitioner, produced Curley as a witness. If the testimony of Mr. Curley was so dispositive of the matter as to definitely show that the petitioner was not guilty of the crime for which he has been convicted, there would indeed be a strong basis upon which to urge that relief of some character should be afforded to him. As it is, to grant the relief here asked for, in the circumstances here shown, would be placing a premium upon withholding the testimony of a witness whose name had been made available by the prosecution to the defense. I do not find any support in the evidence for the contention that there has been such failure to disclose evidence as amounts to a suppression, or that there has been a denial of any constitutional right of the petitioner which would deprive the Court of jurisdiction to proceed with his trial and impose sentence upon him as a result of his conviction therein.

Other matters were argued at the hearing, but they are so palpably of the kind which cannot be considered in a proceeding of this character that it is not deemed necessary to enter upon a discussion of them.

It is, therefore, ordered that the writ heretofore issued in these proceedings be, and the same is hereby discharged, and the petitioner is hereby remanded to the custody of the respondent.