James H. **HARRIS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 19256.

United States Court of Appeals
District of Columbia Circuit.

Argued April 25, 1966.

Decided Dec. 6, 1966.

Mr. Paul H. Weinstein, Washington, D. C., for appellant.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Mr. David C. Acheson, U. S. Atty., at the time the brief was filed, Messrs. Frank Q. Nebeker, David Epstein, Asst. U. S. Attys., and Mr. John R. Kramer, Asst. U. S. Atty., at the time the brief was filed, were on the brief for appellee. Mr. David G. Bress, U. S. Atty., also entered an appearance for appellee.

Mr. Dennis G. Lyons, Washington, D. C., appointed by this court as amicus curiæ on behalf of appellant.

Before BAZELON, Chief Judge, FAHY, Circuit Judge, WASHINGTON, Senior Circuit Judge, DANAHER, BURGER, WRIGHT, McGOWAN, TAMM and LEVENTHAL, Circuit Judges.

PER CURIAM:

This appeal from a robbery conviction was ordered reheard by the court *en banc*, thereby vacating the earlier disposition by the panel, because it appeared to present broad issues with respect to the search of automobiles by the police under a departmental regulation addressed to the securing of the contents of impounded cars. We were variously urged by the Government to proclaim a general doctrine of the amenability of automobiles to warrantless search as instrumentalities of crime, and by the defense to declare the regulation invalid on its face. On closer examination, however, we do not think this case, at least in the posture it reaches us, presents us with such far-ranging alternatives. In particular, we are, as the trial judge said of himself, "not called upon" to deal "with the broad question of the right of police officers to conduct searches of motor vehicles not contemporaneous with an arrest of the defendant at all times and all places."

The car in question was observed leaving the place where the robbery occurred. It was found several hours later, and appellant was arrested as he was getting into it in front of his home. Appellant was taken promptly to the precinct police station, the arresting officer having first

made a call for the police towing crane to come and take the car to the station also.[1]

The arrest was made at about 1:30 P.M. At 3:00 P.M., the crane operator came into the police station and told the arresting officer that he had just placed the car on the station parking lot. He said that, although it was raining and the windows were down, he had not rolled them up to protect against the rain because he was afraid of disturbing finger prints. The arresting officer testified that he went out immediately to the car for two purposes. One was to inventory its contents as required by the regulation, and the other was to roll up the windows because it was raining. Accomplishment of the former purpose was begun by opening the door on the driver's side of the car; and a complete examination of the interior of the car was made through,

and by means of, this mode of entry. Having completed this examination, the officer then went around to the other side of the car for the sole purpose of rolling up the windows. When he opened the right front door for this purpose, there came into his view a registration card which had been lying on the door jamb concealed by the closed door. This was the card of the robbery victim which had been contained in the wallet taken from him in the robbery.[2] It is claimed that it should have been excluded from the evidence at the trial because of the illegality of the search which disclosed it.

We state the foregoing facts as they were found by the trial judge who heard the evidence on the motion to suppress. The matter of credibility was very much in the judge's mind, and he adverted to it at length in his findings.[3] He concluded

---

1. There is no issue before us as to the propriety of the police seizure of the car itself. This was conceded by the defense at trial, and is unchallenged here. The officer testified that, at the scene of the arrest, he made a quick but fruitless scrutiny of the interior of the car to see if there were any weapons. He also testified that his purpose in calling the crane was to impound the car as possible evidence itself of the commission of the crime. Once impounded, his purpose in examining it further was simply to carry out his duties under the regulation applicable to all cars of which the police find themselves lawfully possessed and for which they have a responsibility. Were we compelled to come to grips with Fourth Amendment considerations in this case, this testimony might perhaps be of great relevance, at least in defining with precision such issues as the degree of contemporaneity required between arrest and search for criminal evidence, and the differences, if any, for Fourth Amendment purposes between the usual search of this nature, on the one hand, and an inventory search under a housekeeping regulation, on the other.

2. The officer testified that, after bringing appellant out to look at the card where it lay, the card was taken up and into the station where it was placed in an envelope for delivery to the Police Property Clerk. The officer thereafter went out again to the car and completed his inventorying under the regulation by opening the trunk at the back of the car.

A day later the officer got a search warrant directed to the Police Property Clerk, and it was under this warrant that the card was yielded up for use as evidence.

3. The trial judge participated at length in the examination of the arresting officer about the circumstances of the discovery of the evidence sought to be excluded. Indeed, after the arresting officer had completed his testimony and been excused, he was later recalled at the court's instance in order that he might tell his story again. At the request of both sides, the court asked the questions which elicited again the officer's detailed account of what took place in connection with the examination of the car at the police station. The court's own characterization of the witness's testimony is as follows:

"The Officer, I think, has been very frank in his testimony. Where there have been things that may not have been particularly helpful to the Government's case, he has told us about those things; and I have no reason to discredit his statement as to which I don't think there can be any possible mistake, because, as I have stated to counsel, he was asked about it twice, and he was very emphatic about it. I must conclude as a matter of fact that be opened that door simply for the purpose of operating the window, raising the mechanism so that that window might be raised."

from the facts as he found them that the officer had opened the right front door solely for a lawful purpose (*i. e.*, to roll up the window to protect against the rain), and that that action brought into open view a piece of incriminating evidence. There was, in his view, no search at all in relation to this particular evidence, and therefore, no Fourth Amendment issue inescapably requiring resolution. Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

We can reach such an issue only by refusing to accept the facts as they have been found by the judge who heard the evidence and who made precise and explicit findings on the basis of what he heard. Our own reading of the record does not provide us with any warrant for such a rejection. The case strikes us as something of a factual sport, but by no means an incredible one in the light of everday experience. It is, in any event, an inappropriate vehicle for appellate resolution of the large and important issues pressed upon us.

The conviction is affirmed.

FAHY, Circuit Judge (dissenting):

I agree with Judge J. Skelly Wright that the order granting the en banc application should be vacated as improvidently granted and the division opinion of the court, which follows the rule of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), should be reinstated.

J. SKELLY WRIGHT, Circuit Judge (dissenting):

A rehearing *en banc* was granted in this routine criminal appeal because the Government determined to use this case as a platform for launching its novel instrumentality theory with respect to the search of automobiles. The court, however, now avoids the instrumentality issue and decides that the police, at the moment they found the evidence in question, were not searching the car after all. Since the court *en banc* finds it unnecessary to come to grips with the *en banc* issue, the order

granting the *en banc* application should be vacated as improvidently granted, and the panel opinion [1] of this court, which follows the rule of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), should be reinstated.

I respectfully dissent.

APPENDIX

Mr. Paul H. Weinstein, Washington, D. C., for appellant.

Mr. Allan M. Palmer, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty. at the time the brief was filed, Frank Q. Nebeker and David Epstein, Asst. U. S. Attys., and John R. Kramer, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee. Messrs. John C. Conliff, Jr., U. S. Atty. at the time of argument, and Edwin C. Brown, Jr., Asst. U. S. Atty. at the time the brief was filed, also entered appearances for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

Appellant's automobile was used as a getaway car. It was spotted leaving the scene of the robbery for which he was convicted in the District Court. The car was traced, and appellant was arrested later in the day as he was getting into it. Appellant was taken to the police station, and a tow truck was called to impound the car. The car arrived at the station an hour and a half later and, according to police testimony, the arresting officer "secured" it pursuant to police regulations. This included placing a property tag on the auto, searching for and removing all valuables for safekeeping, and locking up the auto's windows and doors. The officer began by opening the left front door, tying a tag to the steering wheel, and examining the rear and front seats of the car, the floor, and the glove compartment. He then went around to the right rear door and opened it to roll up the window and lock the door. When he opened the right front door to repeat this process, he

---

1. The panel opinion is made part hereof as an appendix.

discovered, under the door, the automobile registration card of the robbery victim.

After a hearing on a motion to suppress this evidence, the trial court ruled the evidence admissible because the officer had seen the evidence in "open view" while acting pursuant to police regulations to protect the car and its contents and, alternatively, because the officer, at the moment he opened the right front door and saw the registration card, intended only to roll up the window to protect the car. On appeal the Government vigorously advances the argument that, since the auto was seized contemporaneous to the arrest as an instrumentality of crime, it came into the lawful custody of the police and could subsequently be searched without a warrant.

■ The "open view" doctrine does not help us here. In the course of its reasoning, the court relied by analogy upon United States v. McDaniel, D.D.C., 154 F.Supp. 1 (1957), affirmed, 103 U.S. App.D.C. 144, 255 F.2d 896, cert. denied, 358 U.S. 853, 79 S.Ct. 82, 3 L.Ed.2d 87 (1958), where officers entered a house with consent and then saw the evidence (a towel) in open view. But in McDaniel the entry was lawful; whether the warrantless and unconsented entry into the auto in this case was lawful is the issue we must decide, since it was only after entering the auto that the officer saw the registration card. Compare Caldwell v. United States, 8 Cir., 338 F.2d 385, 388 (1964), cert. denied, 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277 (1965).

■■ The entry cannot be justified merely because it was made pursuant to police regulation. The police cannot legalize unconstitutional searches simply by promulgating and acting pursuant to regulations, no matter how "reasonable" they may be. Compare Spriggs v. United States, 118 U.S.App.D.C. 248, 250–251, 335 F.2d 283, 285–286 (1964). Certainly evidence so obtained cannot be used against the accused. Id., 118 U.S. App.D.C. at 251, 335 F.2d at 286. Compare Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

The trial court found, however, that the entry was lawful because the officer's intent, at the moment he discovered the evidence, was to roll up the window to prevent harm to the auto from the light rain then falling, rather than to search. But this finding does not necessarily justify the admission of the evidence seized. See Spriggs v. United States, supra; Killough v. United States, 119 U.S.App.D.C. 10, 14, 336 F.2d 929, 933 (1964). Moreover, the facts in this case clearly demonstrate that the officer intended, generally, not only to protect the car from harm, but to search for and secure valuables. The officer admitted, and the trial court recognized, this more general intent (Tr. 241–242), and his action in searching the vehicle both before and after finding the registration card demonstrates it. That, at the moment he found the evidence, he was engaged in one aspect or another of the general course of conduct he had undertaken seems inconsequential.

■■ The search can only be justified, therefore, if it falls within one of the two "exceptions to the requirement that searches and seizures be undertaken only after obtaining a warrant," which are (1) where procuring a warrant is impracticable, and (2) where the search is incident to a lawful arrest. United States v. Ventresca, 380 U.S. 102, 106–107, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). No argument is made, nor can one be made, to bring this case within the first exception, so the search must either have been incident to a lawful arrest or be ruled unlawful.

A unanimous Supreme Court recently stated in Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed. 2d 777 (1964):

"* * * The rule allowing contemporaneous searches [of the person and place of arrest] is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which

might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. * * * "

The search in this case took place an hour and a half after the arrest, at a police station to which the car had been hauled. The accused was "under arrest and in custody" and the search was "made at another place."

While the pre-*Preston* cases are inconsistent in their interpretations of "contemporaneous,"[1] the post-*Preston* decisions of this court provide little support for the argument that the search in this case was contemporaneous. In Smith v. United States, 118 U.S.App.D.C. 235, 335 F.2d 270 (1964), we held unlawful a search of an auto which had been impounded right after the arrest the evening before. We reached the same result in Bowling v. United States, 122 U.S.App. D.C. 25, 350 F.2d 1002 (1965), where the search was made after the police had taken the car and its suspects to a service station some miles from the place of arrest. Other circuits are in accord,[2] and the cases upholding searches of autos are clearly distinguishable.[3]

In an ingenious effort to avoid the rule of *Preston,* the Government would have us uphold the search on the theory that, since the auto lawfully came into police

1. Compare Shurman v. United States, 5 Cir., 219 F.2d 282, *cert. denied,* 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253 (1955) (unlawful for arresting officer to search car at scene of arrest upon return from placing suspect in custody); Rent v. United States, 5 Cir., 209 F.2d 893 (1954) (unlawful to search at 10:30 A.M. a car impounded at 1:00 A.M. after an arrest at midnight), with Fraker v. United States, 9 Cir., 294 F.2d 859 (1961) (dictum) (lawful to search suspect's impounded car an hour and a half after arrest); Bartlett v. United States, 5 Cir., 232 F.2d 135 (1956) (lawful to search suspects' car as soon as it reached garage); Sisk v. Lane, N.D.Ind., 219 F. Supp. 507 (1963), *affirmed on other grounds,* 7 Cir., 331 F.2d 235 (1964), *petition for cert. dismissed,* 380 U.S. 959, 85 S.Ct. 1100, 13 L.Ed.2d 977 (1965) (search upheld where arrest took place at 7:00 A.M. and where both suspect and his car arrived at station simultaneously, though independently, at 8:00 A.M., when search was immediately begun).

2. Simpson v. United States, 10 Cir., 346 F.2d 291 (1965) (day after arrest); United States v. Cain, 6 Cir., 332 F.2d 999 (1964) (two hours after arrest).

3. In Price v. United States, 121 U.S.App. D.C. 62, 348 F.2d 68, *cert. denied,* 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125 (1965), when the officers spotted the auto involved, they looked inside and saw part of the evidence eventually introduced. The suspect was arrested, and an officer brought his car to the station where a search was made and all visible objects removed. From 20 to 25 minutes later an officer noticed the lights of the suspect's car blinking on and off, and found a friend of the suspect reaching under the seat. He arrested the friend, took him to the station, and returned and found, under the seat, another piece of evidence which was introduced. The court, relying upon the "open view" doctrine, ruled that the first seizure was incident to the first arrest; the other piece of evidence was seized, reasoned the court, incident to the *second* arrest: the officer "came into its possession at the place of the arrest and contemporaneously with it; for the sequence followed by the officer, that is, first taking the arrestee into the station, was a reasonable and practical one and the brief time thus consumed did not destroy the contemporaneousness of the search." *Id.,* 121 U.S.App.D.C. at 64, 348 F.2d at 70.

In Crawford v. Bannan, 6 Cir., 336 F. 2d 505 (1964), "contemporaneous" was held to include a search at the place of arrest which took place a "few minutes" after the suspect was taken away in a wagon. In Burge v. United States, 9 Cir., 342 F.2d 408, *cert. denied,* 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72 (1965), police searched the suspect's auto without warrant seven days after his arrest. The court explained its decision on the ground that the police told the suspect at the time of arrest that they were seizing the auto pursuant to 49 U.S.C. § 782, which provides for forfeiture of autos used to transport narcotics for sale.

custody as an instrumentality of crime seized incident to an arrest, it could subsequently be treated the same as any other piece of evidence.[4] This attempt to equate an automobile used in a crime with any other object, such as a weapon or a pair of shoes, has underlying merit. An auto is often essential to the commission of crime, frequently the very object of crime. For a number of reasons, however, the instrumentality theory is unacceptable.

To begin with, there is virtually no authority to support it. While the theory has not been explicitly rejected by either the Supreme Court or this court, both courts have held unlawful searches of autos which were instrumentalities of crime. Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925), with its command that "[i]n cases where the securing of a warrant is reasonably practicable, it must be used * * * ," and the whole line of contraband seizure cases involved autos which were instrumentalities.[5] The only support for the theory is in two cases which, in upholding searches on other grounds, mention, without relying on, the fact that the auto involved was an instrumentality.[6]

The dearth of support is understandable. To validate the instrumentality theory would carve another exception from the general rule against searches without warrants. The existing exceptions to the general rule that personal property may be invaded only after "a neutral and detached magistrate" has determined that probable cause for the invasion exists, Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), are dictated by practical necessity. The instrumentality theory presents no such compelling reasons for allowing the police to search without warrants.

Moreover, the implications of the instrumentality theory give reason to pause. If an auto is treated as a piece of evidence, it becomes irrelevant whether the search occurs at the place of arrest or elsewhere, at the time of arrest or much later. Nor need the police have any idea of what they are looking for—a consequence which undermines the protection the particularity requirement normally affords. See Trupiano v. United States, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). Compare Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957).

---

4. The arresting officer testified, in fact, that the auto was seized as "evidence" in the case. (Tr. 34, 68.)

5. Even in *Preston* it is arguable that the officers reasonably believed the car had been stolen, a position not inconsistent with the charge of vagrancy. The suspects had been parked in a business district for five hours. They admitted they were unemployed, and together they held 25 cents. "One of the men said that he had bought the car the day before (which later turned out to be true), but he could not produce any title." 376 U.S. at 365, 84 S.Ct. at 882, 11 L.Ed.2d 777. See also Smith v. United States, *supra*.

6. In Price v. United States, *supra* Note 3, this court stated that "[t]he indications were strong that the automobile had been used in the robbery and as a carrier of articles stolen * * *." 121 U.S.App. D.C. at 64, 348 F.2d at 70. What significance the court attached to this fact

is uncertain, since the entire opinion was devoted to showing that the officers had seen some of the evidence, that the evidence was seized at the same time as the arrests, and that the whole business had been an uninterrupted series of events.

In Trotter v. Stephens, E.D.Ark., 241 F.Supp. 33 (1965), the court, in upholding a search of an auto two hours after it arrived at the courthouse, stated that "Trotter's automobile was an instrumentality of the crime * * *," and that "[t]he car was obtained incident to and contemporaneous with Trotter's arrest * * *." But here, too, reliance was placed on the fact that the officer, who had reason to believe a rape had just taken place in the car, noticed at the time of arrest that the radiator was warm and that there were stains on the seat. Also the court argued that the search of the car two hours after the arrest "was merely part of one continuous act * * *." *Id.* at 41–42.

If an automobile used as an instrumentality of crime can be subjected to a general search without a warrant at the pleasure of the police, a home said to be so used could be subjected to the same treatment. The automobile, like the home, is a repository of the "papers, and effects" of "the people" as contemplated in the Fourth Amendment. Both may be used as instrumentalities of crime, but both may be searched only after obtaining a search warrant or at the time and place of the lawful arrest of the occupant. Preston v. United States, *supra.* Compare Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). See Jones v. United States, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).

Reversed.

WASHINGTON, Circuit Judge, did not participate in the foregoing decision.

