George E. ROSS, Jr., Petitioner,

v.

The Honorable John J. SIRICA, United States District Judge, Respondent.

No. 20535.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 23, 1966.

Decided Jan. 23, 1967.

Petition for Rehearing en Banc Denied March 24, 1967.

Mr. Karl G. Feissner, Washington, D. C., for petitioner.

Mr. Geoffrey M. Alprin, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the pleadings, for respondent.

Before BAZELON, Chief Judge, and FAHY and WRIGHT, Circuit Judges.

PER CURIAM:

We are asked to issue a writ in the nature of mandamus directing the District Judge to remand this case for a proper preliminary hearing in accordance with the procedure outlined in Blue v. United States, 119 U.S.App.D.C. 315, 321, 342 F.2d 894, 900 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965). For reasons which follow, we think the preliminary hearing should be reopened.

Petitioner was arrested on a charge of first degree murder and brought before a United States Commissioner. A continuance was granted to permit counsel assigned by the Legal Aid Agency to represent petitioner at the preliminary hearing. Prior to the hearing, counsel sought issuance of subpoenas to compel the attendance of three witnesses. He supported this request with an allegation that these witnesses were "material and necessary to the defense, and that they were alleged eye-witnesses to the so-called occurrence." [1] The Commissioner refused to issue subpoenas. The Record of Proceedings recites his reasons as: "Probable Cause rests on testimony adduced by the Govt.—Rule 17b [of the Federal Rules of Criminal Procedure] requires evidence of witness to be material to the defense." The hearing was held and a police officer testified concerning statements which these witnesses had made to him. The witnesses did not appear. The Commissioner found probable cause and ordered petitioner held to answer in the District Court.

■ An indictment was subsequently returned and present counsel was appointed to represent petitioner in the District Court. A number of motions were filed,[2] including a motion to dismiss

---

1. The Commissioner's Record of Proceedings recites that counsel "Filed Motion for Issuance of 3 named witnesses—averring testimony relative to the issue of probable cause." That motion, however, is not in the record. At the hearing in the District Court, present counsel offered to prove that the representation quoted in the text was made to the Commissioner and had the Legal Aid attorney available to testify. The Government informed the District Court that "we do not object to that proffer."

2. Among other pre-trial motions, petitioner sought access to certain police records contending that they constituted public records within the contemplation of 4 D.C.Code §§ 134, 135. We think the District Court's ruling on this point is not reviewable by extraordinary writ. Carter v. Schweinhaut, No. 19,044, decided by order February 2, 1965. Similarly, we decline now to review the District Court's refusal to appoint a private investigator pursuant to petitioner's application under the Criminal Justice Act, 18 U.S.C. § 3006A(e).

the indictment or, alternatively, to remand for a proper preliminary hearing. When that motion was denied, petitioner instituted this proceeding.

■■ We have recognized that the preliminary hearing is an important right of an accused affording him "(1) an opportunity to establish that there is no probable cause for his continued detention * * * and (2) a chance to learn in advance of trial the foundations of the charge and the evidence that will comprise the government's case against him." Blue v. United States, *supra*, 119 U.S.App.D.C. at 322, 342 F.2d at 901 (footnote omitted). We have held that the accused is entitled to the assistance of counsel at such hearings [3] and that he may obtain subpoenas to compel the attendance of "material witnesses reasonably requested * * *." [4] Moreover, we have held that the right to a preliminary hearing, if timely asserted, is not forfeited solely by the later return of an indictment.[5]

■ The Government makes no effort to defend the Commissioner's ruling that probable cause rests solely on the Government's evidence. Probable cause rests, as Rule 5(c) explicitly states, on "the evidence" presented which necessarily includes that adduced by the accused either in cross-examination of Government witnesses or by the introduction of independent evidence or testimony. The Commissioner sits as a judicial officer to sift all the evidence before resolving the probable cause issue, Washington v. Clemmer, *supra* at 227–228, 339 F.2d at 727–728, and cannot decline to issue subpoenas on the ground that only the Government's evidence is probative.

■■ At oral argument, although not in its opposition, the Government contended that the showing before the Commissioner was insufficient to warrant the issuance of subpoenas. We disagree.[6] Petitioner sought to compel the attendance of three eyewitnesses to the alleged crime, "averring testimony relative to the issue of probable cause." Such witnesses are within the compass of Washington v. Clemmer, *supra,* where we said: "[l]ikely to be called on this basis, in addition to alibi witnesses, are the complainant and other material witnesses named

3. Holmes v. United States, No. 19,519, decided July 21, 1966; Dancy v. United States, 124 U.S.App.D.C. 58, 361 F.2d 75 (1966); Blue v. United States, *supra.* This right is now codified in the Federal Rules of Criminal Procedure. See F.R. CRIM.P. 5(b), 44(a).

4. Washington v. Clemmer, 119 U.S.App. D.C. 216, 219, 339 F.2d 715, 718 and 119 U.S.App.D.C. 226, 339 F.2d 725 (1964).

5. In addition to the cases cited in note 3, *supra, cf.* Drew v. Beard, 110 U.S. App.D.C. 198, 199, 290 F.2d 741, 742 (1961). While our cases have required a showing sufficient to permit an "informed speculation that the trial itself was * * * prejudicially affected" if the preliminary hearing point is raised after conviction, Shelton v. United States, 120 U.S.App.D.C. 65, 66, 343 F.2d 347, 348, cert. denied, 382 U.S. 856, 86 S.Ct. 108, 15 L.Ed.2d 93 (1965), pre-trial relief in accordance with the procedure detailed in Blue v. United States, *supra*, turns on whether the requirements of Rule 5 have been followed and whether the accused has otherwise been "substantially afforded * * * the opportunities and

information to which he was entitled under our decision in Blue * * *." Carter v. Schweinhaut, No. 19,044, decided by order February 2, 1965. Were the rule otherwise, Rule 5 could "be disregarded and set at naught with impunity." Dancy v. United States, *supra* note 3, 361 F.2d at 78.

6. We read the Commissioner's Record in conjunction with the factual proffer made in the District Court. See note 1, *supra.* Petitioner's counsel announced that he had "finished the statement as to the facts" and the Government informed the District Judge that it "would not object to Your Honor's acceptance" of the facts. The Government's position, both in the District Court and in its filed opposition, is that the indictment rendered moot any infirmities in the preliminary hearing procedure. Having followed this course, we do not think the Government can now argue a factual issue which petitioner was prepared to prove but failed to do so because the Government interposed no objection to his statement of facts. *Cf.* Giordenello v. United States, 357 U.S. 480, 488, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

in the complaint who for some reason have not been called by the Government." 119 U.S.App.D.C. at 219, 339 F.2d at 718.[7]

■■■ This is not to say that an accused may in all circumstances require subpoenas for the production of the Government's witnesses. However, where an accused shows that witnesses are material to the issue of probable cause, requests for subpoenas for such witnesses should be granted. This is consistent with the principal purpose of the preliminary hearing as a mechanism to determine whether the evidence is adequate to establish probable cause. Whatever the full reach of the accused's subpoena rights at a preliminary hearing, we hold that he is entitled to compel the attendance of eyewitnesses unless, of course, "because of physical or psychological disability in a particular case" such witnesses cannot attend. Washington v. Clemmer, *supra* at 219 n. 11, 339 F.2d at 718 n. 11. Moreover, to hold otherwise would be to sanction a distinction between the indigent accused who must rely on the Commissioner for the issuance of subpoenas and his moneyed counterpart who can secure subpoenas instantly by paying the statutory service and witness fees.

■■■ From the foregoing, we think it clear that the Commissioner improperly declined to issue the subpoenas which petitioner had timely requested and that, in consequence, petitioner was deprived of a proper preliminary hearing in accordance with Rule 5. Under our holdings in *Blue* and *Washington*, this would ordinarily suffice to warrant issuance of the writ. The Government, however, citing Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), argues that the return of an indictment renders any defect in the preliminary hearing procedure "moot." *Jaben* was quite a different case. There,

a complaint alleging violations of the tax laws was filed within the limitation period but no preliminary hearing was held. An indictment was returned after the limitation period had run. The Government contended that the timely filing of the complaint tolled the statute; Jaben argued contrary. The Supreme Court sustained the Government's contention and held that the prosecution was not barred by the statute of limitations. In the course of the majority opinion, Mr. Justice Harlan observed:

> "[W]e think that the Government must proceed through the further steps of the complaint procedure by affording the defendant a preliminary hearing as required by Rule 5, unless before the preliminary hearing is held, the grand jury supersedes the complaint procedure by returning an indictment." 381 U.S. at 220, 85 S.Ct. at 1369.

It is this language on which the Government relies. But the Court was careful to point out that Jaben, who was represented by counsel and at liberty on bond, made no effort to obtain a preliminary hearing during the one month interval between the filing of the complaint and the return of the indictment. 381 U.S. at 221 n. 3, 85 S.Ct. at 1369 n. 3. *Accord*, Crump v. Anderson, 122 U.S.App. D.C. 173, 352 F.2d 649 (1965). We find nothing inconsistent between such a rule and our holding in *Blue* involving defective preliminary hearings which have been held prior to the indictment or improperly waived prior to the indictment. Indeed, in *Blue* we were careful to point out that persons intending to challenge an alleged defect in the preliminary hearing procedure should do so promptly and before trial. 119 U.S.App.D.C. at 321– 322, 342 F.2d at 900–901. *Jaben* does not undermine the holding in *Blue* that an accused who demands the preliminary hearing as is his right is entitled to such a hearing and that, if the point is properly

---

7. The three witnesses were identified in the affidavit annexed to the complaint and incorporated therein by reference. Additionally, the record shows that these three were the Government's only witnesses before the Grand Jury and, in fact, are the only persons known by the Government "to be witnesses of the crime set forth in the indictment * * *."

and timely pressed, a denial of that hearing cannot be excused by pointing to an intervening grand jury indictment.[8]

Finally, we simply note a point not raised by the Government. Obviously, since defects in the preliminary hearing procedure affect the determination of probable cause and the confinement which rests on such a determination, remedial measures should be promptly undertaken. Where an accused is adequately represented by counsel in the interim between the hearing and arraignment following the return of an indictment, and where no adequate excuse for failure to raise the preliminary hearing defect earlier is tendered, a serious question of timeliness would be presented. However, since neither the District Judge nor the Government raised this point, and since this is a capital case, we are not inclined to decide the issue *sua sponte.* We repeat what was said in *Blue:* "These remedies should, of course, be asserted at the earliest possible moment. Where, however, indictment occurs before it is feasible for assertion or resolution of the claim to have been made, relief is not to be denied for that reason alone." 119 U.S.App.D.C. at 321 n. 7, 342 F.2d at 900 n. 7.

 We think the District Judge should have granted petitioner's motion and remanded for a proper preliminary hearing where he could subpoena and examine the three witnesses whose attendance he timely and adequately sought. We are certain that the District Court will promptly insure that this is done. Accordingly, in lieu of the writ prayed for, we will direct our Clerk to transmit a certified copy of this opinion forthwith.

So ordered.

8. At one point in the proceedings, Jaben did complain of the denial of an opportunity to cross-examine witnesses at a preliminary hearing. United States v. Jaben, 226 F.Supp. 757, 758 (W.D.Mo. 1963). That point was abandoned on appeal, no doubt due to Jaben's one month acquiescence during which no hearing was held. We have examined the petition for writ of certiorari and the briefs filed with the Supreme Court in *Jaben* and note: (1) the only issue raised in the Supreme Court was the statute of limitations issue and (2) the *Blue* line of cases dealing with proper preliminary hearing procedures was not discussed, or even cited, in the briefs.

Before BAZELON, Chief Judge, and FAHY, DANAHER, BURGER, WRIGHT, MCGOWAN, TAMM, LEVENTHAL and ROBINSON, Circuit Judges, in Chambers.

### ORDER

PER CURIAM.

On consideration of respondent's petition for rehearing *en banc* and of petitioner's memorandum in opposition thereto, it is

Ordered by the court, *en banc,* that respondent's aforesaid petition is denied.

FAHY, Circuit Judge, concurs in the foregoing order denying rehearing *en banc* and files a separate statement.

McGOWAN and LEVENTHAL, Circuit Judges, concur in the foregoing order denying rehearing *en banc* for the reasons set forth in their separate statement filed this day.

DANAHER, Circuit Judge, for the reasons set forth in his separate statement filed this day would grant respondent's aforesaid petition.

BURGER, Circuit Judge, for the reasons set forth in his separate statement filed this day in which TAMM, Circuit Judge, joins would grant respondent's aforesaid petition.

ROBINSON, Circuit Judge, for the reasons set forth in his separate statement filed this day would grant respondent's aforesaid petition.

STATEMENT OF CIRCUIT JUDGE FAHY

FAHY, Circuit Judge:

I was a member of the three-judge division which rendered its opinion Jan-

uary 23, 1967. I add a few lines now to point out that the denial of a rehearing en banc is not by the votes of only these three members of the court; it is by a majority of the nine active members of the court. These are the only judges authorized by statute to determine the question of rehearing en banc in this case. Moreover, the several opinions and statements now filed by members of the court demonstrate that a majority of the nine judges authorized to participate are of the opinion that the issuance of an indictment does not necessarily bar a supplementary hearing in case of serious defect in the preliminary hearing. The purpose of the Government's petition for rehearing en banc was to establish the contrary principle. Its contention has been before us a number of times and consideration has been given to the petition for rehearing en banc. So while the position has not formally been presented in a brief styled a brief on the merits, or orally argued at this time, it is one that has been pondered long and hard.

Putting aside the issue of principle above referred to, and turning to the issue whether this particular case is one for disapproval of the Commissioner's conduct of the preliminary hearing, it is obvious that rehearings en banc are at times denied without necessarily approving a division's disposition of the particular case.* For reasons which might differ, a majority of the active members conclude that the facts of this particular case are not such as to indicate that en banc consideration would be fruitful in terms of broad principles for future application.

### STATEMENT OF CIRCUIT JUDGES McGOWAN AND LEVENTHAL AS TO WHY THEY VOTE TO DENY REHEARING *En Banc*

The Government's petition for rehearing *en banc* is not unpersuasive in respect of the confusion which it asserts the panel's opinion will intensify. It would have us resolve this confusion by deciding *en banc* that an indictment always and invariably moots the defects of a preliminary hearing. It was presumably the Government's preoccupation with the attractions of this broad principle that caused it to fail to raise the factual point which might well have led to a different result, *i. e.*, the failure of appellant to seek timely relief. Because that issue is not significant enough to justify *en banc* consideration, we have voted to deny the petition.

Bearing in mind that rehearings *en banc* are an exceptional device for clarifying and shaping the law of the circuit on important issues, we think it undesirable to embark on such clarification in a case which may reasonably be classified as atypical. It will be difficult enough to draw the line for ordering a supplemental preliminary hearing when the petitioner has been diligent, but frustrated, in pursuing his efforts to obtain information in order to terminate unlawful detention. Attempting to develop applicable principles in the absence of a critical context seems to us not only difficult but unsound. Had the timeliness issue been raised, a full development of the facts relevant to it would have been had, and this case could and should have been disposed of by reference to it in the first instance. There would have been no occasion to decide, in the abstract, the question of whether the return of an indictment uniformly moots the matter of a preliminary hearing. The most recent experience of this court with the grant of a Government petition for rehearing *en banc* seeking a broad doctrinal declaration hardly encourages us to repeat it so soon. See Harris v. United States, 125 U.S.App.D.C. 231, 370 F.2d 477 (1966).

The record shows that appellant had counsel before May 17, 1966, the date set for the preliminary hearing. Indeed, on May 13 counsel moved for the issuance of the subpoenas here in question. That motion was denied the same day. Thus,

---

* See *e.g.*, statement of Burger, J., in Washington v. Clemmer, 119 U.S.App.D.C. 216, 225, 339 F.2d 715, 724 (1964).

four days before the preliminary hearing, counsel knew that he could not have there the witnesses he wanted. If he thought that the presence of those witnesses was important to the issue of the deprivation of appellant's liberty, he should have sought relief immediately from the District Court. Instead, he did nothing, the preliminary hearing was held, and appellant continued in jail. On July 13—almost exactly two months later—the indictment was returned.

This is not a *Blue* [1] case. There, the accused was not provided with counsel, and had no preliminary hearing. The court announced in *Blue* for the first time that, in the District of Columbia by reason of the Legal Aid Agency Act, the accused should be offered counsel by the Commissioner—a right now reflected in the Federal Rules. The court knew that there must be defendants who, at the time *Blue* came down, had already been indicted but not tried. The court did not regard these indictments as wiping out the Commissioner's failure to furnish them with counsel as it found he was required to do under the D.C. statute. The court was careful to say that any of these defendants who wanted the hearing which they had foregone without the advice or assistance of counsel should seek it before trial.

We think a similar principle should apply to those defendants who, although provided with counsel before the Commissioner and who have had hearings, contend that the hearings were significantly defective in some respect. To say that the preliminary hearings were defective is to say that the determination of probable cause was inadequate and should not operate to deprive the accused of his liberty pending grand jury consideration. Wholly apart from the disorderliness and potential waste involved in not seeking correction of the Commissioner until after the grand jury has acted, it would seem to us to be the

plain duty of counsel to try to save his client from a custody which he believes may prove to be improper.

The focus of the solicitude embodied in the procedural device of the preliminary hearing is the liberty of the accused. Should it be taken away from him because there is probable cause to believe that he has committed a crime for which the grand jury will indict? To the extent that the prosecution is put to its proof of such probable cause, the accused in effect gets discovery of that much of the Government's case as is comprised of the evidence it adduces to establish probable cause. But that is an inevitable consequence of the hearing, and not its primary purpose. It may well be that there is language in the *Blue* opinion which obscures this true relationship of discovery to probable cause. But, however cloudy or misconceived that language may be, the relationship, as it is given to us to understand it, is as described above.

It does not follow from this that the return of an indictment automatically forecloses the question of a preliminary hearing. Jaben v. U. S.,[2] is at best a Delphic utterance on this point, since what four justices of the Supreme Court said there was in the context of a claim that the Government had filed a last-minute complaint solely for the purpose of tolling the statute of limitations pending grand jury presentment. In *Blue*, the court was not prepared to permit the right to counsel there articulated to be rendered academic by the easy supposition that the anticipated grand jury action would moot the defect.

This aspect of *Blue* would be set at naught if the Government were right in its contention that an indictment is a jurisdictional bar precluding any subsequent effort to supplement a defective preliminary hearing. The Government would also immunize from judicial scrutiny a practice whereby preliminary

1. Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894 (1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed. 2d 964 (1965).

2. 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

hearings are avoided through continuances granted routinely until mooted by an indictment.[3] If such a practice were attempted in the District, we would find no insuperable barrier in meeting the problem through the sanction of requiring a hearing after indictment. Similarly, we see no jurisdictional barrier to a like sanction for coping with the withholding of critical witnesses whose testimony is the key to the issue of the reasonableness of continued detention. The compelling reason justifying that sanction is to avoid the threat to personal liberty—the risk of unlawful detention without probable cause—inherent in such practices, and not their denial of the limited degree of discovery which a preliminary hearing incidentally, though inescapably, provides. Whether and how that sanction is to be used should await delineation in cases involving the claim that indictments caused the frustration of timely efforts to cure defective proceedings.

It is our belief that discovery in criminal cases should be substantially enlarged, and we regret that those who had the drafting of the Federal Rules in charge did not go beyond the amendments effective July 1, 1966. But the preliminary hearing is neither a proper nor an adequate substitute for the more comprehensive discovery which we think those Rules should be enlarged to provide. We see no reason why the scope of the discovery available to a defendant should turn on whether he has been proceeded against in the first instance by complaint before a magistrate or by grand jury indictment.

Extension of the discovery principle through stretching the preliminary hearing entails extension of proceedings before a judicial or quasi-judicial official who may not be suitable for the role of supervising discovery in felony cases (whether a commissioner or judge normally engaged in trial of misdemeanors),

and without any possibility of mutuality of discovery.

In introducing legislation which would, among other things, deal definitively with the question of when the return of an indictment puts to rest the matter of a preliminary hearing, Senator Tydings, in the Senate speech referred to above, set forth these findings of his Subcommittee on the use of the preliminary hearing as a discovery vehicle:

At our hearings, there was a considerable amount of discussion of the preliminary hearing as a discovery device. Most witnesses concluded, however, that they would prefer that adequate discovery be provided by other means, and that the discovery question be treated separately from that of the preliminary hearing. We agree. The preliminary hearing is not well suited for discovery for a number of reasons. First, under current doctrines it will always be possible to bypass the preliminary hearing—and therefore discovery—by proceeding rapidly to indictment after arrest or by arresting the defendant only after an indictment has been returned, in which case the Rule 5 preliminary hearing process is not involved at all. Second, it is possible to hold a preliminary hearing on only one of several charges, and later to indict and try the defendant on other charges. Third, the amount of discovery that a defendant receives in a preliminary hearing depends on the amount of proof the commissioner requires the Government to bring forward to establish probable cause; this may be quite a bit, or it may be very little, but in either event it need not be all the evidence within the possession of the Government that should be subject to discovery. Moreover, the preliminary hearing should be conducted promptly after arrest, but a discovery proceeding is probably more efficiently conducted at a later stage, closer to trial, after counsel has had an

---

**3.** In a statement to the Senate on February 9 last, Senator Tydings indicated that this was the practice "in at least one important district."

opportunity to reflect at leisure about the defense, and when the evidence against the accused is likely to be more complete.

We believe that discovery in criminal cases should stand on its own feet. It should not be inextricably entwined in the process of establishing probable cause, but should be designed to facilitate an exchange of information making the trial a more rational method of determining the truth. As such, discovery should be available to all defendants, including those whose arrest following indictment takes them out of the Rule 5 preliminary hearing process, and including those who for one reason or another do not get a preliminary hearing.

Therefore, we feel that discovery, apart from the preliminary hearing, should be handled in the Federal Rules of Criminal Procedure. A new Rule 16, which liberalizes somewhat criminal discovery procedures, took effect last July 1. Some people feel that this new rule does not go far enough, particularly in that it does not cover statements of witnesses and does not contemplate the possibility of the taking of depositions. We hope that the Supreme Court and the Judicial Conference and its committees will carefully scrutinize the operation of the new Rule 16 and will give consideration to further liberalization of the criminal discovery procedures in the Federal courts, so that the Congress does not have to act. This is one area in which we have lagged behind a number of our more progressive State court systems. 113 Cong.Rec. 1883, 1885 (daily ed., Feb. 9, 1967).

We have no difficulty with the panel's holding as to the merits of appellant's original request for subpoenas, at least when that holding is closely related to the record. The Government's witness at the preliminary hearing was a policeman who gave a hearsay account of what he had been told by three eye-witnesses to a capital crime. A judicial officer engaged in a judicial determination of probable cause can hardly rest easy solely with the hearsay account of the policeman of what these eye-witnesses told him if the eye-witnesses can be available, so that he can listen to their versions and observe their demeanor, and provide an opportunity to defense counsel to explore their account on cross-examination.[4] The presence of those witnesses impresses us as falling within the orbit of the rights conferred upon the accused by the fourth sentence of Rule 5(c), FED.R.CRIM.P. The getting of eye-witness testimony on record before trial, either by preliminary hearing or otherwise, is not, incidentally, an invariable disadvantage to the prosecution. The Government can be greatly embarrassed by eyewitnesses who see things differently by the time trial is reached. See Coleman v. United States, 125 U.S. App.D.C. 246, 371 F.2d 343 (1966), cert. denied, 386 U.S. 945, 87 S.Ct. 979, 17 L. Ed.2d 875 (1967). So viewed, this holding does not open up the Government's entire evidence in every case to discovery at the preliminary hearing.

We end where we began, with the judgment that this is not an appropriate case for clarification through rehearing *en banc*. An apparent majority of the judges of this court have already pondered the question enough to know that they do not accept the Government's sweeping claim of immunity on jurisdictional grounds. We agree with the Government that supplementary hearings are not available purely as discovery, but we also

---

4. We do not intend to imply that if the judicial officer is satisfied from the account of an eye-witness that probable cause exists he is nevertheless obligated to hear other witnesses, or provide the accused with an opportunity to examine them. This would provide a discovery that is not merely incidental to the establishment of probable cause. However, the accused would still be entitled to summon witnesses under a proffer that they would so negative probable cause as to establish his right to be free of detention. Washington v. Clemmer, 119 U.S. App.D.C. 216, 339 F.2d 715 (1964).

believe they may be available in case of serious defect in the preliminary hearing that supposedly justified the restraint on liberty. Further clarification is best provided, we think, through traditional judicial development in terms of concrete cases where diligent efforts have come to naught.

### STATEMENT OF CIRCUIT JUDGE DANAHER AS TO WHY HE VOTES TO GRANT REHEARING *En Banc*

DANAHER, Circuit Judge:

Here the Government has asked for *en banc* consideration of the January 23, 1967 opinion of a division of this court. We know, as a practical fact, that the Solicitor General, deeming the issue of importance, must have approved the Government's petition. He can not be unaware that there is now and that for the last few years there has been substantial disagreement among the judges of this court on the matter of "discovery" in preliminary hearings. In this area as in yet others where close questions have arisen with resulting controversy, resolution of the conflicting viewpoints of the judges of this court should be attempted.

Sometimes only two judges, again as in the instant case, three, undertake to promulgate as law their own particular conclusions no matter what other judges of the court may take to be the proper rule. Guided by pronouncements of the Supreme Court and by the views particularly of other United States Courts of Appeals in analogous situations, some of the non-sitting judges, perhaps not unreasonably, think they should have the benefit of oral argument respecting novel, significant and important positions when urged upon the court. If for example, in the instant case, the three sitting judges are convinced of the rectitude of their position that "discovery" should by command of the court be made available at preliminary hearings, I would have supposed they should be the first to seek majority concurrence. Of course I realize at once that by the mere exercise of power and by the denial of opportunity to the non-sitting judges to learn the nature and the scope and the extent of a particular ruling, compliance with the literal language of 28 U.S.C. § 46(c) has been had. Obviously, unless a majority of the Circuit Judges in regular active service shall so vote, the non-sitting judges will not have heard the arguments of the Government nor will they have had an opportunity, as at an oral presentation, for appropriate questioning to ascertain the impact of the rule pronounced by the sitting division in a given case.

The President's Commission on Crime in the District of Columbia recently observed in its report released December 15, 1966, pages 324, 325:

"[T]he Commission is concerned by the widespread community feeling that the outcome in a particular case too often depends on the choice of judges.

We believe that the court should be sensitive to the effects of judicial dissension on the public, those convicted of crime, and attorneys who argue before the court. The nature of the court's peculiar jurisdiction in the District makes an appearance of uniformity more critical than in courts concerned exclusively with Federal crimes. Increased use of the en banc procedure may contribute to this salutary result." [1]

The Commission went on to point out

"that appellate rulings have a vital impact on the total law enforcement process, both in terms of the substance of particular judicial restrictions and the certainty with which they can be relied upon by police, prosecutors and trial courts. In deciding particular cases, the court bears the heavy responsibility for weighing these consid-

---

1. And see my discussion re *en banc* hearings in Cafeteria & Restaurant Wkrs. U., Local 473 v. McElroy, 109 U.S.App. D.C. 39, 51, 55 *et seq.*, 284 F.2d 173, 185, 189 *et seq.* (1960), 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Hansford v. United States, 124 U.S.App. D.C. 387, 398, 365 F.2d 920, 931 (1966).

erations in an effort to reach a result fair to the community as well as to the defendant."

No amount of sophistry can obscure the ultimate fact that the sitting division had hoped to engraft upon our courts their own theory of discovery, notwithstanding that the Rules promulgated by the Supreme Court and approved by Congress, make no provision for any such result. Suppose a single eyewitness to a murder shall at preliminary hearing identify the accused as the culprit, may not the magistrate find probable cause to hold him? Must every other of many witnesses likewise be produced? There can be no question that in furtherance of the concept of a search for truth, many learned judges and commentators have sought an extension of pretrial discovery in criminal cases. 8 MOORE'S FEDERAL PRACTICE-CIPES ¶ 1.07 Committee Note [2] (1966), relating to proposed amendments to Rule 16, points out that here is "a complex and controversial issue." Cited are various source references and cases which have considered the problem. But the fact remains that the Federal Rules of Criminal Procedure, despite much urging, have never provided for the type of pretrial discovery which the sitting division would here enjoin upon the District Court and the United States Commissioner, especially since an indictment had been returned.

It has long been settled law, both in this Circuit and elsewhere that there is not even a constitutional right to a preliminary hearing prior to indictment or prior to trial. Clarke v. Huff, 73 App. D.C. 351, 119 F.2d 204 (1941). Jurists like Chief Justice Vinson and Associate Justice Rutledge, when members of this court, and the late Chief Judges Groner and Stephens (to mention only noted Chief Judges now deceased) never had the slightest doubt that Goldsby v. United States, 160 U.S. 70, 73, 16 S.Ct. 216, 218, 40 L.Ed. 343 (1895) had stated the law when the Court said:

"The contention at bar that because there had been no preliminary examination of the accused, he was thereby deprived of his constitutional guaranty to be confronted by the witnesses, by mere statement demonstrates its error."

The rights of the accused, said the Supreme Court, were to be determined and protected at trial. Ex Parte United States, 287 U.S. 241, 250, 53 S.Ct. 129, 77 L.Ed. 283 (1932). Mindful, obviously, that such was the law, the Supreme Court has recognized that probable cause for the detention of an accused to stand trial might be established by a valid indictment by a grand jury. So wrote Mr. Justice Black in Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and so thought Mr. Justice Holmes writing for the Court in Holt v. United States, 218 U.S. 245, 247, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). And see Jaben v. United States, 381 U.S. 214, 220, 85 S.Ct. 1365, 14 L.Ed. 2d 345 (1965); and Mr. Justice Rutledge writing for this court in Jordon v. Bondy, 72 App.D.C. 360, 114 F.2d 599 (1940). He observed that it had been repeatedly held that the prosecution is under no obligation to call all witnesses subpoenaed by the Government.

If references to such cases and their holdings may suggest a lack of uniformity either in approach or in the decisional process, I suggest that the exhortation of the President's Commission, *supra,* should here be regarded. I vote for rehearing *en banc* that those of us who have not heard the Government's statement of its position may the more certainly appraise the issue. If mine is not a reasonable position with reference to the exercise of power by this court, it may not be taken amiss if I suggest that Congress in its consideration of problems of law enforcement in the District of Columbia make provision that the return of a valid indictment will, *ipso facto,* establish probable cause to hold an accused for trial irrespective of any decision or rule of court.

**568**

STATEMENT OF CIRCUIT JUDGES BURGER
AND TAMM ON VOTES TO GRANT RE-
HEARING *En Banc*

BURGER, Circuit Judge, (with whom TAMM, Circuit Judge joins):

Despite the fact that a Grand Jury has returned an indictment, the opinion of the sitting division which four judges voted to review [1] directs the District Court to order another preliminary hearing before the accused is tried. The opinion of the sitting division does not tell us what can be accomplished by such a remand or whether a United States Commissioner can conduct some sort of "appellate" review of the action of a Grand Jury. The sitting division's opinion, therefore, presents a very important and recurring question as to the relationship between a preliminary hearing and an indictment; it intensifies the confusion surrounding the role of the preliminary hearing which began with a misconception of what the *Blue* opinion really meant. For these reasons we voted to grant the government's petition for rehearing *en banc*.

Judges McGowan and Leventhal seem to say that if the case were heard by the full court it *might* be decided on a narrow factual basis outside the framework of issues posed by the Government and that such a narrow aspect does not warrant *en banc* consideration. This overlooks the fact that we can, as we often do in granting an *en banc* hearing, define the issues to be considered. The question presented by the Government's petition is not what disposition may be made of this particular case if it is heard *en banc;* rather the question before us now is whether the sitting division's opinion will create confusion in the day-to-day administration of justice if it is left standing without an examination by the full Court. It may be that the Court *en banc* would decide the case on the narrow factual element referred to, although we seriously doubt it, but the failure of the sitting division to decide the case on that ground should not insulate from examination by the rest of us of what six members of the Court—Judges McGowan and Leventhal included—seem to consider a confusing holding in an important area of the law.

Judges McGowan and Leventhal also suggest, if we read them correctly, that while it is difficult to draw a line for ordering a "supplemental" preliminary hearing where the petitioner has been diligent, it is both difficult and unsound to do so where he was not diligent. This anticipates what an *en banc* court would consider, *i. e.*, whether a preliminary hearing can have any purpose or function after an indictment.[2]

---

1. The Department of Justice so rarely asks us to rehear a case *en banc* that we ought to give great weight to those few requests it makes, as the Supreme Court does to petitions for a writ of certiorari authorized by the Solicitor General.

2. Judges McGowan and Leventhal express a desire for a reserved power of "sanction" against prosecutors and United States Commissioners but it is interesting to note that the sitting division did not order the hearing as a sanction. Judges McGowan and Leventhal pose, in their "sanction" point, a very important question which has not been briefed or argued and we are not in a position to pass on it. We note, however, that they reserve this "sanction" power on the basis of a statement attributed to a Senator that "in at least one important dis-

trict" (unnamed) the Government is receiving continuances of preliminary hearings until the Grand Jury acts and mootness can be claimed.

In this case, of course, Appellant had a preliminary hearing long before he was indicted. Thus Judges McGowan and Leventhal are talking about "sanctions" simply on the basis of a statement in Congress about the Government's practice in *one* of the 90 United States Districts and without regard to the facts of this case or inquiry into whether there is any such practice in *this* district. If, on evidence, we should ever find that a United States Commissioner is acting improperly this Court and the District Court can summarily direct him to alter his practices. We have no evidence whatever on this score.

If we assume the extraordinarily remote possibility that the United States

Judges McGowan and Leventhal emphasize that a preliminary hearing's purpose is the determination of probable cause for detention and that, while "discovery" may sometimes be a consequence of a preliminary hearing, it is not the purpose but a by-product. This statement assumes special significance coming from Judge McGowan as the author of *Blue*. We would have thought it more orderly and efficient judicial administration if Judges McGowan and Leventhal would have permitted the four judges who want an *en banc* hearing to participate in the usual way in any pronouncement on this important question—*after* full hearing. However, since we are not to have a full-scale hearing we are left to indicating our general acceptance of the long standing precedents on this subject, and to that extent we agree with Judges McGowan and Leventhal that a preliminary hearing is an examination to determine probable cause for continued detention.

It should be clear from all that has been said by or on behalf of the six non-sitting judges, that a majority of the Court does not agree with the three judges of the sitting division in their effort to re-write the procedure authorized by Congress for a preliminary hearing so as to convert it into a discovery mechanism. We have no doubt that District Judges and others who deal with these hearings will take an accurate "head count."

We join in expressing our agreement with the statements of Judges Danaher and Robinson.

Commissioner after hearing the alleged "critical witnesses" concludes no probable cause is shown, would anyone suggest he could *reverse* the Grand Jury! The heart of the "sanction" therefore is that the Commissioner and the United States Attorney will have been made to

## STATEMENT OF CIRCUIT JUDGE ROBINSON AS TO WHY HE VOTES TO GRANT REHEARING *En Banc*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

I share with other members of the court deep concern over the increasing uncertainty left in the wake of the decisional series headed by *Blue*. The difficulty could, of course, be dissipated by firm judicial definitions as to the legitimate function of the preliminary hearing and the impact of an intervening indictment. But during the more than two years elapsing since the panel decision in *Blue*, the full court has not dealt with these broad, recurrent questions. This, in my judgment, has promoted the imprecision we now find in this important area of the law.

Because I think *en banc* consideration is overdue, I have voted to grant the Government's petition. In doing so, I perceive no impediment to reaching the basic issues, which the statements subscribed by five of my colleagues in some measure address. I have not joined in any of these expressions, and do not intimate an individual view on the merits, since neither course would contribute to the solution present conditions demand. Clarification by the court as a whole, after briefing and argument, appeals to me as the only method by which we can hope to discharge our responsibility to mold stable procedures to govern preliminary hearings in the District of Columbia.

"stand in the corner" because subpoenas were not issued. We ought not suggest the use of judicial power so casually and with so little purpose.

In any event, our colleagues' discussion of "sanctions" is irrelevant to the *en banc* petition.