## In the Matter of S.R.M., Appellant.

### No. 85–1136.

District of Columbia Court of Appeals.
Argued Aug. 23, 1985.
Judgment Aug. 23, 1985.
Dissent Oct. 21, 1985.

Terrell N. Roberts, Langley Park, Md., appointed by this court, for appellant.

Harold D. Martin, Asst. Corp. Counsel, Washington, D.C., with whom Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., was on brief, for appellee.

Before MACK, * NEWMAN and STEADMAN, Associate Judges.

NEWMAN, Associate Judge, dissenting:[1]

Based on the evidence presented before Judge Levie, which at oral argument on this appeal five days later the government conceded was all the evidence it had, the majority concludes that Judge Levie did not err when he ordered S.R.M., a juvenile, preventively detained. Since in my view this evidence would be insufficient to permit the government even to make an open-

ing statement at trial in good faith, I respectfully but most vigorously dissent.

S.R.M. was arrested and charged with assaulting the complainant with a bat and malicious destruction of property. He was presented before Judge Levie on the same day. The District of Columbia sought secure detention pending trial; they based this request on another pending case charging S.R.M. with murder and related offenses.[2] As he was required to do before ordering detention, Judge Levie held a probable cause hearing. D.C.Code § 16–2312(e), (f) (1981). Officer Banks, who arrested S.R.M., but who had not been involved in investigating the assault and destruction of property, testified as to what a detective who had investigated the matter had told him concerning the complainant's assertion of what transpired. No other evidence was presented. At the conclusion of the hearing, Judge Levie found probable cause and that the criteria of D.C.Code § 16–2310 (1981) for detention had been met; he ordered that S.R.M. be incarcerated pending trial.[3]

The following day, S.R.M. filed a motion seeking reconsideration of the detention order; attached to that motion was a written statement of the complainant. This written statement contradicted Officer Banks' account of the previous day in one significant respect—it stated that S.R.M. had not been involved in the offenses in any manner. S.R.M.'s counsel, exemplifying the high standard desired of counsel for an accused, had procured the presence of the complainant at the hearing; he testified under oath. He recounted the events of the assault with a dangerous weapon and malicious destruction of property. He affirmed the account given by Officer Banks the previous day in all respects save one—he repeatedly denied that S.R.M. had been in-

---

* Associate Judge Newman dissents and will file a published dissent at a later date.

1. We decided this case by order entered on August 23, 1985, after a hearing held that day. The order reflected that I would publish a dissent thereafter.

2. S.R.M. had been released pending trial in that case.

3. S.R.M. properly does not challenge either this determination of probable cause or the findings under D.C.Code § 16–2310.

volved in any manner. On cross-examination, the District of Columbia sought to show that his recantation was the product of fear and/or intimidation. The complainant acknowledged that he had heard that S.R.M. had been charged with first-degree murder and was awaiting trial on that charge; however, he denied that he had been threatened or otherwise intimidated with respect to his recantation. No other evidence was presented. After hearing argument, Judge Levie determined that the complainant's sworn recantation was not credible and that he credited his unsworn statement to the investigating detective as recounted by Officer Banks. He continued S.R.M. in detention pending trial.

D.C.Code §§ 16–2310, –2312(e), (f) permit a juvenile to be preventively detained pending trial if there is (1) a judicial determination that such detention is necessary to secure the presence of the juvenile at the next hearing or to protect the person or property of others or of the juvenile; and (2) a judicial determination that there is probable cause to believe the juvenile has committed the offense alleged.[4] A finding of probable cause is a condition precedent to an "extended restraint of liberty following arrest." *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). *See also Schall v. Martin, supra.* As is the case with respect to an adult, the requirement of a finding of probable cause in this context is to require "that enough information be presented to the ... [judge] ... to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." *Jaben v. United States,* 381 U.S. 214, 224–25, 85 S.Ct. 1365, 1370–71, 14 L.Ed.2d 345 (1965). "And the Government's demonstration on probable cause must surmount not only difficulties of its own but also any attack the accused may be able to mount against it." *Coleman v. Burnett,* 155 U.S.App.D.C. 302, 319, 477

F.2d 1187, 1204 (1973). A probable cause hearing such as required by § 16–2312 "safeguards the accused against groundless and vindictive prosecutions, and avoids for both the accused and the state the expense and inconvenience of a public trial." *Coleman v. Alabama,* 399 U.S. 1, 9 n. 3, 90 S.Ct. 1999, 2003 n. 3, 26 L.Ed.2d 387 (1970). *See Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). *See also United States v. Davis,* 330 A.2d 751, 753 n. 3 (D.C.1975). In sum, the hearing required by § 16–2312 serves to satisfy a due process need for probable cause before an extended period of incarceration can be ordered. *See Schall v. Martin, supra; Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); it is also the statutory equivalent for juveniles of the preliminary hearing provided by Super.Ct.Crim.R. 5(d) for adult felony prosecutions.

The standard for probable cause seeks an accommodation between the liberty rights of the individual and the state's duty to combat crime. As the Supreme Court has said:

These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistake must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. *The rule of probable cause is a practical, nontechnical conception* affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at

---

**4.** The Supreme Court has sustained the constitutionality of such preventive detention statutes relating to juveniles. *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984).

the mercy of the officers' whim or caprice.

*Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (emphasis added).

In determining whether probable cause has been shown, the judicial officer must be aware of and evaluate the quality of the evidence. As the United States Court of Appeals for this circuit has said with respect to probable cause hearings:

> To the extent that hearsay is employed, the effort to establish probable cause becomes more prone to attack since the reliability of the absent hearsay declarant always becomes an added factor to be reckoned with. In *Ross [v. Sirica,* 127 U.S.App.D.C. 10, 380 F.2d 557 (1967)], where, similarly to Dancis' case the Government's one witness at a preliminary hearing on a murder charge was a police officer who would merely relay what three eyewitnesses had told him about the crime, two judges of this court aptly observed, without dispute from the rest, that
>
> > A judicial officer engaged in a judicial determination of probable cause can hardly rest easy solely with the hearsay account of the policeman of what these eyewitnesses told him if the eyewitnesses can be available, so that he can listen to their versions and observe their demeanor, and provide an opportunity to defense counsel to explore their account on cross-examination.

*Coleman v. Burnett,* 155 U.S.App.D.C. 302, 321, 477 F.2d 1187, 1206 (1973) (citations omitted).

These cases demonstrate that the purpose of a probable cause hearing is not to engage in a theoretical or academic analysis of the question of probable cause. Rather, the purpose is to determine whether there is sufficient reliable evidence presented which will justify the detention of the juvenile pending a trial at which the government has some reasonable prospect of prevailing.

I accept, as I must, the trial judge's evaluation of credibility. Even so, in my view there was no lawful basis for detaining S.R.M. pending trial.

It is problematic, at best, whether the complainant's out of court statement is admissible. Even assuming it is, its impact has been devastated by the complainant's written and in-court testimonial recantations. In my judgment, the government could not make an opening statement in good faith if this constituted their proof. And at oral argument on this appeal five days after Judge Levie reaffirmed his finding of probable cause and the detention order, the government conceded in response to inquiry by me that even then, it had *no* other evidence.

> ... [T]his case is ... about the constitutional right to liberty.... Ironically enough, my concern is not with the constitutional rights of ... [SRM whose case will likely be disposed of before this dissent is published].... My concern is with My constitutional rights....

*United States v. Edwards,* 430 A.2d 1321, 1365 (D.C.1981) (Associate Judge Mack, dissenting). In my view, the majority disserves the constitutional right to liberty of all of us when they sustain the preventive detention of S.R.M. on this record.